## McPherson v. Cox.

Bill in chancery, praying for the removal of the defendant as the trustee in a deed made to secure to the complainant the payment of a bond in the defendant's possession, and for the delivery of the bond. The defendant asserts a lien on the bond for legal services rendered to the complainant. *Held*, 1. That while a state of mutual ill-will or hostile feeling may justify a court in removing a trustee, in a case where he has a discretionary power over the rights of the *cestui que trust*, and has duties to discharge which necessarily bring the parties into personal intercourse with each other, it is not sufficient cause where no such intercourse is required and the duties are merely formal and ministerial, and no neglect of duty or misconduct is established against him. 2. A contract to pay to an attorney-at-law for his services in suits concerning land, if it be recovered, a specific sum of money out of the proceeds, when it

shall be sold by the client, is not champertous, because he neither pays costs nor accepts the land, or any part of it, as his compensation. 3. Nor is it void under the Statute of Frauds because not in writing, for it may be performed within the year. 4. The land having been recovered, and by the owner sold for $38,000, for which a bond was taken and left with the attorney, the latter has a lien on the bond for money due him for his services as such. 5 Where, under the circumstances mentioned, the client brings a bill in chancery for the removal of the attorney from his position as trustee in the deed to secure the purchase-money, and for the delivery of the bond, it is the duty of the court to decide on the existence and amount of the lien set up in the answer, and to decree such delivery on payment of the amount of the lien, if one be found to exist. 6. Though the defendant, by neglecting to file a cross-bill, can have no decree for affirmative relief, it is proper for the court to establish the condition on which the delivery of the bond to the complainant, according to the prayer of the bill, should be made, and to require such delivery on the performance of that condition.

APPEAL from the Supreme Court of the District of Columbia.

On the twenty-sixth day of November, 1870, Mrs. Mary A. Cox, the appellee, who was a widow, sold and conveyed to Charles H. Holden, Charles W. King, and Samuel Ford, square No. 312 of the city of Washington, for the sum of $38,000. No part of this was paid at the time, but a bond was given for it, due ten years after date, with interest payable annually; and, to secure the payment of this sum and of the interest as it fell due, the purchasers made a deed of trust, with the usual conditions, to John D. McPherson and Jesse B. Wilson. At the time of the transaction, the bond was placed in the possession of McPherson, the appellant, where it remains to the present time.

In June, 1873, Mrs. Cox filed her bill in chancery, in the Supreme Court of the District of Columbia, praying that McPherson be discharged and removed from his trust under the deed, and be compelled to deliver to her the bond of Holden, King, and Ford.

The court decreed that, on account of the ill-feeling and unfriendly relations shown to exist between the parties, by reason of a controversy between them in regard to a claim of McPherson for $5,000 for legal services, against Mrs. Cox, and of a lien for that amount on the bond mentioned, it was fit and proper that he should cease to be such trustee. It accordingly declared him removed as trustee, and all his rights and powers

vested in the other trustee, Wilson; and ordered him to deliver up the bond to Wilson, who was to hold it subject to the further order of the court. But Wilson was to receive and pay over to Mrs. Cox all that might be paid on it, except $10,000 of the latest payments, which was to be retained subject to the further order of the court.

From this decree McPherson appeals to this court.

The remaining facts in the case are set forth in the opinion of the court.

*Mr. Philip Phillips* and *Mr. George F. Appleby* for the appellant.

Ill-feelings and unfriendly relations of a *cestui que trust* towards his trustee constitute no ground for removing the latter from his trust. *Forster* v. *Davies*, 4 De G., F. & J. 133; *Gibbes* v. *Smith*, 2 Rich. (S. C.) Eq. 131; *Berry* v. *Williamson*, 11 B. Mon. (Ky.) 245; Hill, Trustees, 191.

The appellant was in no fault in any of the transactions complained of by the appellee; and the court below, in paying no regard to the testimony, and decreeing his removal, acted arbitrarily, and without a full consideration of the whole case. *Eyre* v. *Potter*, 15 How. 42; *Bouldin* v. *Alexander*, 15 Wall. 132; *Peter* v. *Beverly*, 10 Pet. 564; *Sergeant* v. *Howe et al.*, 21 Ill. 148; *Berry* v. *Skinner*, 30 Md. 572; *Gibbes* v. *Smith*, *supra*; *Berry* v. *Williamson*, *supra*; Tiffany & Bullard, Law Trusts and Trustees, 387.

The court erred in decreeing that the appellant should part with the possession of the bond on which he claimed a lien for his professional services as an attorney-at-law. *Platt* v. *Haler*, 23 Wend. (N. Y.) 456; *Warren* v. *Griswold*, 8 id. 666; *Worrall* v. *Johnson*, 2 Jac. & W. 218; *Russell's ase*, 1 Keny. 129; *In re Murray*, 1 Russ. 519; *In re Paschal*, 10 Wall. 483; Maughan, Solicitors and Attorneys, 107, 137; *Prevost* v. *Gratz et al.*, 6 Wheat. 481; *Zeigler* v. *Hughes*, 55 Ill. 288; *Clark* v. *Pendleton*, 20 Conn. 495; Chitty, Contr. 75, and cases cited.

The bill should have been dismissed for want of proper parties, and for multifariousness, and because it was prematurely filed. *Wilbur* v. *Almy*, 12 How. 191; 2 Story, Eq. Jur., sect. 1280; *Drane* v. *Gunter*, 19 Ala. 731; *Cruger* v. *Halliday*, 11 Paige (N. Y.), 319; *Sergeant* v. *Howe et al.*, 21 Ill. 148,

*Breedlove* v. *Stump*, 3 Yerg. (Tenn.) 257; Story, Eq. Pl., sect. 271.

*Mr. Albert Pike, contra.*

Whatever the contract was as to the amount of the contingent fee, there was no note or memorandum of it in writing, and it was not contemplated by either party that it was to be, or could be, performed on either side within a year. Therefore, by the Statute of Frauds in force in th District of Columbia, it was of no effect.

The contract was clearly champertous. *Thurston* v *Percival*, 1 Pick. (Mass.) 415; *Kenney* v. *Browne*, 3 Ridgway, Cas. Parl. 462; *Strange* v. *Brennan*, 10 London Jurist, 649; *Stevens* v *Bagwell*, 15 Ves. 139; *Wood* v. *Downes*, 18 id. 120; *Strachan* v. *Brandon*, Eden, 303; *Stanley* v. *Jones*, 7 Bing. 369; *Lathrop* v. *Amherst Bank*, 9 Metc. (Mass.) 489; *In re Masters*, 4 Dowl. P. C. 18; *Williams* v. *Protheroe*, 5 Bing. 313; *In the Matter of Bleakley*, 5 Paige (N. Y.), 311; *Merritt* v. *Lambert*, 10 id. 352; *Rust* v. *Larue*, 4 Litt. (Ky.) 411; *Arden* v. *Patterson*, 5 Johns. (N. Y.) Ch. 44; *Satterlee* v. *Frazer*, 2 Sandf. (N. Y.) 141

To call the fee contingent is an abuse of language.

If the contract was not champertous, it is because success was to be certain, and then the fee was enormously exorbitant and extortionate Such contracts, made when the client is, by fear, doubt, and apprehension, under the lawyer's influence, cannot be sanctioned. *Walmesley* v. *Booth*, Barn. 478; *Drapers' Company* v. *Davis*, 2 Atk. 295; *Saunderson* v. *Glass*, id. 298; Sayer, Law of Costs, 321; Hobart, 117.

Anciently, a counsellor-at-law could bring no action in any English court, for his fee was not a debt. This was law in the time of Coke, and in that of Lord Hardwicke. The fees of counsel were *honoraria*, not *merces.* 1 Coke, Inst. 295 *a; Moor* v. *Row*, 1 Rep. Ch. 21; *Thornhill* v. *Evans*, 2 Atk. 331; *Chesley* v. *Beliot*, 4 T. R. 317; *Newman* v. *Payne*, 4 Bro. C. C. 352; *Aubrey* v. *Popkin*, 1 Dick. 403; *Saunderson* v. *Glass*, 2 Atk. 295; *Crossley* v. *Park*, 1 Jac. & W. 460. See also Dupin, ainé, Profession d'Avocat. i., 105–110, 147, 597, 599, 690, 698, 699, 715; Camus, Lettre de la Profession d'Avocat, id. 267, 273.

There are no transactions which courts of equity will scrutinize with more jealousy than those between attorneys and their clients, especially when the latter are of inferior capacity and inexperienced. *Mills* v. *Mills*, 26 Conn. 217; *Ex parte Plitt,* 2 Wall. C. C. 453; *Haight* v. *Moore*, 37 N. Y. Sup. Ct. 161; *McMahon* v. *Smith*, 6 Heisk. (Tenn.) 167.

. The court, if its action is needed, will disregard a contract for contingent fees, and allow counsel what, under the circumstances, it deems fair. The contract must have been made in abundant good faith, without suppression or reserve of facts, or exaggeration of apprehended difficulties, or undue influence of any sort or degree; and the compensation bargained for must be reasonable, and the transaction characterized throughout by all good fidelity to the client, or the court will not hold such compensation to be valid. *Ex parte Plitt*, 2 Wall. Jr. 473.

It is for the attorney to show that the dealings between him and his client, by which the attorney is benefited, are just and fair, and purely voluntary. *Mason* v. *Ring*, 2 Abb. (N. Y.) Pr. N. S. 322; *Brock* v. *Barnes*, 40 Barb. (N. Y.) 521.

The oral contract relied on is on its face void under the Statute of Frauds. It was not for any service presently to be rendered, nor were the counsel to engage in any litigation where the result would be doubtful. They were not to attempt, and they did not attempt, to "break the lease" for the forfeiture of the contract to build. They were to wait until, some time during the seven years unexpired, the lessee might possibly, by a breach of another covenant, clearly and indisputably forfeit all right; and then they were to sue.

The appellant cannot retain the bond. He has no lien thereon, and no right thereto, —

*First*, Because there is no valid contract, and no indebtedness as claimed.

· *Second*, Because the bond was received by him not in his character of attorney or solicitor, nor in the course of his professional employment for Mrs. Cox, nor in the ordinary course of his business, but in his character of trustee alone. *Stevenson*

v. *Blakelock*, 1 M. & S. 538, per Gifford, arg.; and Littledale, J., and Lord Ellenborough ; *Ex parte Nesbitt*, 2 Sch. & Lef. 279 ; *Champernown* v. *Scott*, 6 Madd. 93.

*Third*, Because the terms of the alleged contract are wholly inconsistent with the existence of a lien, it being for payment of the fee, at an uncertain future time, out of the proceeds of the sale of the land, when she should sell the same. *Hilton* v. *Bragg*, 7 Taunt. 21, per Lens, Sergeant, arg.; *The Case of an Hostler*, Yelv. 67, note ; *Cowell* v. *Simpson*, 16 Ves. 275.

The counsel for the appellant said, below, that he did not ask a decree establishing the lien,—which, of course, he could not have upon the pleadings, — but only a decree affirming his client's right to retain the bond. That would be a decree establishing his lien. For the lien of a solicitor on the deeds and papers in his hands is merely a right to withhold them from his client, and not a right to enforce any claim against him; and, as long as the client allows them to remain in the solicitor's hands, the lien is unavailing. *Blunden* v. *Desart*, 2 Con. & L. 119 ; *Bozon* v. *Bolland*, 4 Myl. & Cr. 358.

Such a lien depends not on contract, but on the law. *Blunden* v. *Desart*, supra.

It is not fit that the appellant should continue to be trustee, holding the fee, and claiming a lien on it in his own favor. He only wears the mask of a trust, in order to have thereby an undue advantage of the beneficiary. If he has a lien, he could sell under it, and buy in the property. There is a conflict of interests, which incapacitates him and unfits him to be trustee. *Green* v. *Winter*, 1 Johns. (N. Y.) Ch. 41 ; *Davoue* v. *Fanning*, 2 id. 270 ; *Howell* v. *Baker*, 4 id. 120 ; *Van Horne* v. *Fonda*, 5 id. 509 ; Willard, Trustees, 187, 188, 194, 472 ; Willis, Trustees, 121, 126, 162 ; Hill, Trustees, 535 ; *Henley* v. *Phillips*, 2 Atk. 48.

The removal of a trustee, at the request of the *cestui que trust*, and the appointment of another person to sell the lands conveyed by the deed, is matter of discretion for the court, and will be ordered when good cause is shown. *Ward* v. *Dortch*, 69 N. C. 279.

Mr. Justice Miller delivered the opinion of the court.

The question for our consideration is the soundness of the decree of the court below.

The pleadings show the original bill, an amended bill, and three supplemental bills, and answers, and replications to the answers.

The charges on which complainant asked the removal of McPherson may be classified into those which affirm a neglect of his duty as such trustee, and into those which show acts and intentions hostile to her interests.

Of the first class are charges, —

1. That arrears of interest on the bond have been permitted to accumulate, and that he failed to collect such interest or to sell the property, as the deed of trust authorized.

2. That he neglected to attend to having the property insured or the taxes paid, as was his duty ; and in this connection she charges that she had paid him $150 for that purpose.

Of the acts which show hostile or fraudulent intentions she charges, —

3. That, on a sale made by the obligors in the bond of part of the property, he induced her to release the lots so sold and accept thirteen notes of $1,000 each, secured by a mortgage on them, which notes she supposed was the first lien on those lots; whereas, it turned out that three other notes of like amount, of the same series, secured by the same mortgage, had been issued and sold to *bona fide* holders, and that these notes were a prior lien, and endangered her security. She alleges that this was well known to McPherson, who was acting as her agent and trustee, and was fraudulently concealed from her.

4. That he had notified Ford, one of the obligors in the bond, to pay her no more money, and had thus prevented him from paying to her the interest after it was due.

5. And, mainly, that he sets up a false and exorbitant claim of $5,000 for legal services, and claims a lien on the bond in his possession, and a right to appropriate the first money paid on said bond to the satisfaction of said claim.

The answer denies that the deed of trust imposed on him any obligation to collect the interest, or see to the insurance of the houses or to the payment of the taxes. Denies that he

ever received any money from her to pay for insurance, or any notice to sell for non-payment of interest or taxes. Denies any hostile purpose towards complainant, and any act or intent inconsistent with his duty as trustee. He admits that he does assert a claim for $5,000 due to the partnership firm of Carlisle & McPherson, for services as attorneys and counsellors, in regard to this same property, and for which he claimed, and now asserts in this answer, a lien on the bond, and a right to hold it until that sum is paid. And he denies that in the transaction by which she released certain lots covered by the deed of trust, and received the notes and deed of trust securing them, that any thing was concealed from her. And in regard to this he says that she was present when the matter was transacted, and received in person the thirteen notes and the money for which the other three notes were sold, and knew well what she was doing.

Testimony was taken on all these issues, the most important of which is that of the complainant and defendant and of Carlisle.

As preliminary to any further investigation of these issues, it is necessary to determine the defendant's duties, and his rights under the deed of trust.

After the usual clause of conveyance, it proceeds thus: —

" In and upon the trusts hereinafter mentioned and declared, and for no other purpose whatsoever, that is to say: ·

"In trust: *First*, To permit the said Charles H. Holden, Charles W. King, and Samuel Ford, their heirs or assigns, to use and occupy the said-described premises, and the rents, issues, and profits thereof to take, have, and apply to and for their sole use and benefit until default be made in the payment of the principal sum of the debt hereinbefore mentioned, or of some instalment of the annual interest.

"*Second*, Upon payment of any instalment of the principal of the said debt, to release to the said parties of the first part of said square, which they shall designate in the proportion of two square feet of ground for every three dollars so paid.

"*Third*, And upon full payment of the said debt of thirty-eight thousand dollars ($38,000), and of the interest thereon, and all other proper costs, charges, commissions, and expenses incurred in pursuance of this trust, to release the said square numbered three

hundred and twelve (312), or so much thereof as has not been released, unto the said parties of the first part, their heirs and assigns, at their proper cost.

"*Fourth,* And upon this further trust upon default being made in the payment of the said principal sum, or of any interest due on the same, to sell at public auction, on such terms and after such notice as the said trustees or trustee shall deem proper, so much of the said property as they or he shall deem necessary to pay the sum due, and out of the proceeds in the order following, to pay, 1st, the costs and expenses of said sale, including the usual trustee's commission; 2d, to pay the amount due the said Mary A. Cox, whether of interest or principal; 3d, to pay the said Mary A. Cox the residue of said proceeds to an amount not exceeding the principal sum, or the part thereof unpaid to be received by her in advance, in whole or part satisfaction, as the case may be, of the said principal sum; 4th, to pay over the residue, if any, to the said parties of the first part, their executors, administrators, or assigns."

There is here no duty or obligation or right to do more than two things; namely, to make the releases of parts or of the whole of the ground, as the payments entitled the obligors in the bond to have them made, and to sell the land or parts of it, as their failure to pay might justify, and in making such sale to receive and distribute the money as required. But it is very clear that the trustees assumed no obligation to look after the taxes or the insurance. The deed of trust does not mention either taxes or insurance. Nor were they bound, or did they undertake by any thing found in this instrument, to look after the payment of the annual interest. The bond was made payable to complainant, and she alone was authorized to receive the interest, and to give a valid receipt for it. Payment to either of the trustees would have been no defence to a suit by her.

It is very clear, therefore, that as there was no duty imposed upon the defendant as trustee to look after the taxes or insurance, or the collection of the interest, he was guilty of no neglect in regard to them.

If, as complainant alleges, her interest was not paid, she had a right to have the two trustees advertise and sell the property, or so much of it as would be necessary to pay what was due.

But they were not bound to do this, nor had they any right to do it, until she made request; and there is no pretence that she ever made such request or desired such action.

It is proper to say in this connection that the testimony wholly fails to show the payment of $150, or any other sum, to defendant, to be used in paying for insurance. We may also add, that there is not the slightest evidence that defendant concealed from the complainant, or in any manner misled her in the transaction, by which she released the lots mentioned, and received other security for such release. But it appears very clearly that she was present when the whole thing was done, and received the money for which the notes first due were sold; and, if she did not know they were a first lien, it is not the fault of McPherson.

There remains to be considered the charge that he forbade Ford to pay money to complainant, and that he sets up a false claim for $5,000, and the right to a lien on the bond for that sum.

These may be considered together, as they involve the main subject of controversy below, and lie at the foundation of the suit.

McPherson occupied in these transactions, and is charged in the bill and supplemental bills of complainant with misconduct in two distinct characters or relations to her; namely, as trustee in the deed we have mentioned, and as her counsel and attorney in the management of her lawsuits, and legal adviser in regard to her property. It is important to keep this distinction in mind; for it runs through the whole case, and is recognized in the decree, which not only removes him as trustee under the deed, but requires him to deliver up the bond, although it seems to recognize a right of his in that bond to be established by future litigation.

Now, as we have already said, this bond was payable directly to complainant. She was entitled to its possession, and to receive all the money paid on it, so far as any thing in the trust-deed, or any right conferred on McPherson by that trust, is concerned. Its possession, as connected with the trust, belonged neither to him nor to his co-trustee, Wilson. If, therefore, he had any right to that possession, it must be found in

the other relation we have mentioned, and we will proceed to consider that.

We have the deposition of three witnesses, and three only, who knew and could tell the facts on which the lien of McPherson must rest, if it exist at all. These are the complainant, the defendant, and Carlisle, the law-partner of defendant, and interested with him in the lien asserted.

In regard to the facts which are relied on to create the lien there does not seem to be much, if any, difference in the statements of the parties. It is only when they come to the amount that these differences are irreconcilable.

Without entering minutely into the examination here of what each witness says, we will first state what we consider established beyond question.

It appears that complainant had made to Angus and Lewis a long lease of square 312, with a right in them to purchase at a fixed price; namely, $15,000. That, while they held the property under this contract, it had risen very much in value, and Mrs. Cox became desirous to get released from it. For this purpose she employed McPherson and Carlisle as her lawyers; and they succeeded in recovering possession of the property, avoiding the contract, and recovering rents and profits amounting to $2,700. In doing this, they successfully prosecuted an action of ejectment, a separate action for mesne profits, and defended a suit in equity brought by Angus and Lewis to enforce the original contract. That, in employing the law-firm of Carlisle & McPherson to attend to this business, she agreed to pay them a fixed sum for their services, which, in a letter written to them after a controversy had arisen as to the amount so fixed, she says, "was to be paid out of the proceeds of sales of the property, as such proceeds shall be realized." After the embarrassment of Angus and Lewis's claim had been removed, the whole square was sold, as we have already shown, to Holden, King, and Ford, and the deed of trust and bond made by them, and the bond left with the defendant. This bond was the first proceeds of the sale of the square.

Some time after this, and after Holden, King, and Ford had built houses on some of the lots of the square, they sold them to James Pike for $16,000, and obtained the release of them

by Mrs. Cox, from the lien of the deed of trust, by giving her $13,000 in those notes as payment on the bond, and paying her in cash $4,000, the proceeds of the other notes given in the same transaction.    In the deeds of trust given by Pike on those lots to secure said notes McPherson and Wilson were made trustees, as they had been in the deed from which they were released; but, though the original bond remained through all these transactions with McPherson, the money and the notes arising from this last sale were handed over to complainant.   Although several years had elapsed, and Carlisle & McPherson had no written agreement with complainant about their fee, they permitted the entire proceeds of this last sale, and of the recovery for rents and profits, and the interest which Holden & Co. had paid on their bond, to go into complainant's hands without objection, and had during that time frequently loaned her money, had acted as her counsel and attorneys in both the sales, and drawn all the papers necessary to secure her interests.    Thus far the facts seem undisputed.

, But not long after this last transaction McPherson addressed a note to Mrs. Cox, suggesting that the matter of the fee for the services of his firm, resting only in parol, was not on that account in a satisfactory position, and enclosing her a writing, which he requested her to sign, acknowledging an indebtedness of $5,000 for their services, and a lien on the securities for the land sold.    To this she replied next day, refusing to do as requested, because she said the fee was to be $2,500, and not $5,000.

An animated correspondence now ensued between Mrs. Cox and McPherson, into which Carlisle was also drawn by letters addressed to him personally by Mrs. Cox.

Thereupon McPherson, either with a view to bring her to terms, or more probably as a protection to his right of lien, gave notice to Ford, who had bought out his other partners, not to pay any thing more to Mrs. Cox on the bond; but learning a few days afterward that Ford construed this notice, or used it as a pretext for delaying the payment of the interest due, he told him he could pay the interest to Mrs. Cox.    Not long after this the present bill was filed.

It will thus be seen from this condensed statement of facts

undisputed that complainant acknowledged that she had agreed to pay to Carlisle & McPherson, out of the proceeds of the sale of the property, if she was successful in getting rid of the contract with Angus and Lewis, $2,500, as their compensation, of which she has thus far never paid or tendered a dollar; and that they had successfully performed their part of the agreement. As regards the difference between the parties as to the amount to be paid by complainant, the clear and circumstantial statements of Carlisle and McPherson, under oath, are not overcome by any thing produced by complainant, and we are satisfied she agreed to pay $5,000.

This contract is now assailed as illegal, on three grounds, which we shall consider in their order: —

1. The first is, that the amount is so large in proportion to the services rendered, and the promisor being a woman without other advice when she entered into the contract, that a court of equity should hold it void, as an unjust extortion from an unprotected female.

Our answer to that is, that we believe the services rendered were worth the money, especially as they were to get nothing unless they were successful.

2. It is said the contract is obnoxious to the doctrine of champerty.

The answer is, that the attorneys did not agree to pay any of the costs, they did not agree to take any part of the land, which was the subject of the suit, for their compensation, nor did they agree to take any thing but money. The single fact that they agreed to wait for their money until complainant could sell the land, and to receive a fixed sum out of the purchase-money, does not, under any definition of champerty, bring it within that principle.

3. It is said to be within the Statute of Frauds, because not in writing, and not to be performed within a year.

But the Statute of Frauds applies only to contracts which, by their terms, are not to be performed within a year, and do not apply because they may not be performed within that time. In other words, to make a parol contract void it must be apparent that it was the understanding of the parties that it was not to be performed within a year from the time it was made.

Peter v. Compton, Skin. 353, decided in King's Bench by Lord Holt, and the cases collected under that one in 1 Sm. L. C. 432.

There is nothing in the present contract to show that it was not to be performed inside of a year, nor any thing to show that it could not have been fully performed within that time. The action of ejectment which settled the forfeiture of the lease might have been brought and tried within that time, and the readiness with which the property sold for $38,000 shows that the amount of the fee might have been realized and paid before the year was out. At all events, it cannot be said that the contract was not to be performed within that time.

We are also of opinion that this obligation on the part of complainant to pay $5,000 to Carlisle and McPherson was, and is now, a lien on the bond in McPherson's possession. It is so by the express contract of the parties, as admitted by Mrs. Cox. It was to be paid out of the proceeds of the sale of the land recovered by the suit in equity in which they were employed. The first sale of the land was in a lump, and this bond for $38,000 represents the proceeds of that sale. It is the only proceeds of the sale. It is also a very fair inference, from the fact that the bond was left in McPherson's possession, that it was done as a recognition of the lien. There is no other reason why it should have been left with him. It was no part of his right or his duty as trustee to hold it. Its possession was in no way essential to any of the very few acts which, as trustee, McPherson could be called on to do under the deed of trust. It is, therefore, manifest that it was left with him as her attorney, or as a security for his debt. It is none the less clear to us, that, apart from the express agreement for a lien, the same result follows from his relation to her as attorney, and the possession of this bond as a paper coming to him in the course of his employment in that character. We have decided in the case of Paschal (10 Wall. 483), that an attorney has a lien by law, under circumstances similar to these, for all that is due him as attorney or counsellor, on the papers of his client in his hands.

McPherson has done nothing to waive or defeat this lien. He might very well have insisted, when the square was sold

to Holden & Co., that the fee should then have been paid or secured to him out of the purchase-money. But he accepted possession of the bond as a concession to his client. He continued her counsellor all through the transaction. He advised with her about the sale. He drew up all the writings necessary to the sale and to the security of the purchase-money. His consent to act as trustee in a matter where his duties were merely formal, and in which another trustee was joined with him, are in no sense inconsistent with his position as her attorney, and his rights growing out of that relation. Until she changed them their interests were the same; namely, the faithful and prompt payment of the money due on the bond. The money was hers, but out of it she was to pay the $5,000.

Nor have we been able to discover in the conduct of McPherson any hostility to complainant or to her interests, or any thing in what he has said or done which is inconsistent with the faithful performance of his duty to her under the deed of trust. The only act looking in the slightest in that direction is his warning to Ford to pay Mrs. Cox no more money on the bond. Finding her angry with him, and denying his right to hold the bond as security for his fee, it was necessary to the protection of the security to give some warning to the obligor of his right to be paid before the money all passed into her hands. It may be well doubted if he was not entitled, now after all that had passed, to be paid out of the first money yet to be paid on the bond, even if it were the interest. But, on reflection, he waived that, and told Ford he could pay her the interest. But there was in all this, and in all the quarrel, mainly carried on by complainant, nothing which could in the least interfere with, or would be likely to color his action jointly with, Wilson in executing releases when the property was sold or money paid, or in advertising and making sale when required by complainant in default of payment. If, in doing this, he wished to retain his fee, or any part of it, we have already shown it was his right to do so; and that right cannot be inconsistent with any right of hers, since she was the person who was to pay, and whose debt would be paid, by such a course.

We are, therefore, of opinion that McPherson has a right

to the possession of the bond until the fee of $5,000 is paid, and that he has done nothing inconsistent with his duty as trustee under the deed of trust, nor displayed any hostile feeling to the real legal rights or interest of complainant, nor failed or neglected to perform any duty devolving on him as such trustee.

What, then, should be the decree of the court?

1. As to the removal of McPherson from the trusteeship we think there is no ground for such action.

Where a trustee is charged with an active trust, which gives him some discretionary power over the rights of the *cestui que trust*, and which brings him into constant personal intercourse with the latter, it may be conceded that the mere existence of strong mutual ill-feeling between the parties will, under some circumstances, justify a change by the court. But there is here no such case. McPherson will have, and can have, nothing to do as trustee which requires any personal intercourse with Mrs. Cox. Unless Ford wishes to pay part of the money and ask a release of part of the property, he has literally nothing to do as trustee until the bond is due. And in all that he may have to do as trustee, his duty is so merely ministerial and so clearly defined, that he can do her no harm whatever. When, in addition to this, it is considered that there is another trustee with equal power, and without whom McPherson can do nothing, we see no danger to her interests or any reason for his removal.

The following authorities support this view of the matter: *Forster* v. *Davies*, 4 De G., F. & J. 133 ; *Gibbes* v. *Smith*, 2 Rich. (S. C.) Eq. 131; *Berry* v. *Williamson*, 11 B. Mon. (Ky.) 245 ; Perry, Trusts, sect. 277.

Since, as we have shown, the appellee has a right to the possession of the bond, and there exists no reason for his removal, it is suggested that there should simply be a dismissal of complainant's bill. In support of this view, it is strenuously maintained, by what we think is a misconception of the case as made by the pleadings and the evidence, that the amount of the fee claimed by McPherson and Carlisle, and the existence of the lien, are not issues in this suit of which the court can take notice, or on which it can found any action. It must be

confessed that the case is so far embarrassed by the unaccountable failure of the appellee to file a cross-bill asking for relief by a decree establishing his debt and his lien, that no affirmative relief of that character can be given. But it is not true that the existence and the amount of that lien are not legitimate subjects of inquiry in this case, and necessary to a proper decree.

Leaving out the matter of the trust, of which we have already disposed, complainant asks as relief in regard to this bond, that it be delivered up to her. As a legitimate defence to this demand, McPherson answers that he has a right to the possession of the bond as security for $5,000 due him by complainant. She, by supplemental bills and replications, says you have no such lien, or, if you have a lien, it is only for $2,500. It is beyond dispute, therefore, that the pleadings put in issue the existence of the lien and the amount of that lien for which McPherson can hold the bond. The testimony taken is also mainly devoted to those points. The issue is fairly made. What could be more pertinent to the relief sought, and to the defence against it, than both these issues? It is clear that the bond belongs rightfully to Mrs. Cox. If there is no such lien, she is entitled absolutely to the relief she asked; namely, to have its possession restored to her. If there is a lien on it, she is entitled to have that possession on payment of the lien; and whether she is bound to pay $2,500, or $5,000, or nothing, is to us very clearly a legitimate issue to be tried in the suit. So far, then, as ascertaining her right to the possession of the bond, and the terms or conditions on which that right could be enforced by the court, it seems to us that the issue of the existence of this lien and its amount were not only fairly in the case, but necessary to be determined to enable the court to render such a decree as the pleading, the evidence, and the relief sought required.

That decree is this: —

*That the decree of the Supreme Court of the District be wholly reversed. That a new decree be rendered there, denying so much of the relief sought by complainant as prays for the removal of the defendant from his trusteeship. That it be declared that complainant is entitled to the possession of the*

*bond of Holden, King, and Ford, on payment to McPherson
of the sum of $5,000, for which he rightfully holds said bond
as security for his services to complainant as her attorney
and counsel. And that McPherson have liberty, if he be so
advised, to file a cross-bill for the establishment of his debt
and his lien, and for such remedy for its enforcement as
equity can give in the case.*

MR. JUSTICE STRONG. I concur in the reversal of the decree
of the court below, but I dissent from so much of the opinion as
determines the amount due Messrs. Carlisle and McPherson as
compensation for their professional services, for which the lien
on the bond to Mrs. Cox is asserted. I think that the amount,
as well as the existence of the debt, should be established in
an issue sent to a court of law, especially as no cross-bill was
filed.

MR. CHIEF JUSTICE WAITE. I dissent from the judgment
in this case, and am entirely satisfied with the decree below.

MR. JUSTICE HUNT and MR. JUSTICE HARLAN also dis-
sented.