## Cumberland & Manchester Railroad Company, et al. v. Posey.

(Decided November 3, 1922.)

### Appeal from Knox Circuit Court.

1. Frauds, Statute of—Time in Which Contract May be Performed. —Where there is no definite time fixed in which a verbal contract is to be performed, but it is clearly made to appear from the terms of the alleged contract and its nature and the situation of the parties that they each intended and contemplated at the time that it would not and could not be performed by both parties within one year, and it was not so performed, it is within the statute of frauds even though it was possible to perform it within one year.

2. Frauds, Statute of—Contract for Payment of Salary and Bonus.— Where a civil engineer enters into a contract with a railroad company for a designated salary to be paid monthly during the construction of a proposed railroad, and at the time it is further stipulated that if he remains on the work until it is completed he will be given a bonus at the time of completion, the fact that during the progress of the work his monthly salary is by agree-

ment increased, but there is no change or modification of the original agreement as to the bonus, the original agreement as to that item is not thereby affected so as to prevent the operation of the statute against frauds and perjuries.

3.  Frauds, Statute of—Pleading.—Where a plaintiff relies upon an oral contract which is within the statute of frauds and perjuries, the defendant may get the benefit of the statute under a general denial.

DISHMAN, TINSLEY & DISHMAN for appellants.

SAWYER A. SMITH for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

Appellee instituted this ordinary action against appellants, Cumberland & Manchester Railroad Company and Charles F. Heidrick.

In the first paragraph he alleges that on the 17th day of April, 1915, he was engaged by the defendants as locating engineer of the proposed Cumberland & Manchester Railroad which defendants were then locating, at a salary of one hundred and twenty-five dollars per month, and from July 31, 1916, at one hundred and fifty dollars per month, to be paid at the end of each month until the road was located as directed by the defendants; and that by the terms of said contract plaintiff was to also have an additional sum of one thousand dollars as a bonus in consideration of his agreement then made to continue in the employment of defendants in that occupation until the road was located and the work finished as directed by defendants; and it is alleged that he did in pursuance of that contract stay with the work and continue in the employment until about the 26th day of July, 1917, at which time the work of locating the road and the work under the contract was completed and finished, and although defendants did pay to plaintiff his agreed salary of one hundred and twenty-five dollars per month until July 31, 1916, at which time the contract price was changed to one hundred and fifty dollars per month, they failed and refused to pay the one thousand dollars bonus or any part thereof.

In the second paragraph a claim for two hundred and nineteen dollars and seventy-five cents is asserted for certain extra work alleged to have been done by the plaintiff, and the expenses incurred in doing it, after the termination of his regular contract of employment.

In the third paragraph a certain small item of expenses amounting to five dollars and five cents is asserted and not controverted.

The defendant answered and denied any contract or agreement about the alleged one thousand dollar bonus, and in another paragraph placed in issue the value of the extra services set up in the second paragraph of the petition.   Then in a separate paragraph the answer asserts that during the progress of the work of constructing the railroad, and as an inducement to the plaintiff to stay with the work of construction and expedite the same to completion, the defendants did promise and agree with the plaintiff that commencing August 1, 1916, and so long as he remained upon the work, they would pay to him as a bonus the sum of twenty-five dollars in addition to his original salary and compensation, and that plaintiff accepted this proposition, and it is alleged and shown that defendants did on May 12, 1917, pay to the plaintiff in full settlement and satisfaction of that agreement two hundred and twenty-five dollars in a lump sum which plaintiff then accepted; and they say that this sum so paid is the only bonus ever promised to plaintiff by them or either of them.

The issues were completed by reply, and upon a trial a verdict was returned and judgment entered for the full amount claimed by the plaintiff as to each of these items.

The chief question and the only one necessary to be considered at length is whether the defendants were entitled to a directed verdict for which they asked as to the one thousand dollar item at the conclusion of the whole evidence.

The evidence of the plaintiff himself is that he began work on the Cumberland & Manchester Railroad on the 17th of April, 1915, under a verbal agreement made between him and Heidrick, who was either the president or the general manager of the company; that one afternoon while he and Heidrick were out together on the work, the latter, while discussing salaries, said something to plaintiff about a man by the name of Arthur who was an engineer for Heidrick at the time he employed plaintiff, and said he was expecting Arthur to come and do this work but he had been delayed in coming, and he had first employed plaintiff temporarily to start this work until Arthur came, but that in case Arthur came he would

have to work for plaintiff, "And in talking about salaries we agreed at the time he would give me one hundred and twenty-five dollars per month for work, and he said on his road in Pennsylvania he gave Mr. Arthur a thousand dollars bonus for staying on until his work was completed, and said if I would stay on the work until it was completed he would do as well by me as he did for Arthur in Pennsylvania."

He then proceeded to testify that on or about August 1, 1916, one of the other engineers left the employment of appellants which had the effect to increase the work of plaintiff and then plaintiff threatened to also quit, whereupon Heidrick persuaded him to stay by promising to give him an additional twenty-five dollars per month until the road was completed, saying that he did not then have the money and was "hard up" but would pay it if he would wait until the job was done. Then on cross-examination the plaintiff when asked whether anything was said about the one thousand dollar bonus when he entered into the new agreement for a salary of one hundred and fifty dollars per month, said there was, and then proceeded to state what occurred between him and Heidrick at that time as follows:

"We were in our office discussing it that night when he made me the offer to raise me or my salary twenty-five dollars per month and I agreed to stay on, and he asked me, said 'Posey, do you want that in writing?' and I said 'Well, business is business and I would like to have that in writing, and while you are putting that in writing you might mention that other bonus,' and Mr. Heidrick said 'All right, but it is a little late now and I will write it out a little later on, and he never did and I never asked him to do it."

The whole evidence shows the alleged contract about the one thousand dollar bonus was an oral one and entered into about April, 1915, and that it contemplated the remaining of the plaintiff on the job until twenty-three miles of railroad was constructed and in operation, and that the contractors who were to do the actual work of construction had under their contracts until the 1st of January, 1917, in which to complete the same. In addition to this it is testified by plaintiff himself that he did not consider that he had earned this bonus until he stayed with Heidrick and helped him settle the claims with the contractors, which necessarily was at a time

subsequent to the completion of the contract by the contractors.

It would seem to be conclusive from all the facts and circumstances surrounding the making of this alleged agreement in April, 1915, for a one thousand dollar bonus to be paid at the completion of the work, and, as plaintiff says, after a full settlement with the contractors, the parties could not possibly have had in mind at the time the same could be or would be completed within one year.

The locating and constructing of twenty-three miles of railroad in a rough country is a large undertaking, and from its nature necessarily requires much time. Not only so, it is reasonably clear from the evidence that inasmuch as the contractors did not undertake to complete their work until the 1st of January, 1917, and did not in fact complete it until some time in December, 1916, and this bonus was not to be paid until after that time, the parties were necessarily contracting verbally to do a thing which could not in reason be completed within a year, and which they themselves did not contemplate could or would be completed within that time.

Our statute against frauds and perjuries (section 470) provides that no action shall be brought to charge any person . . . (subsection 7):

"Upon any agreement which is not to be performed within one year from the making thereof, unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing, and signed by the party to be charged therewith or by his authorized agent."

There is no time fixed either in the allegations of the petition or in the evidence introduced, when this contract for the one thousand dollar bonus was to be paid, the allegation and evidence both being that it was to be paid when the work was completed.

In the case of East Tennessee Telephone Company v. Paris Electric Company, 156 Ky. 762, there was an oral agreement between the officers of two public service corporations whereby one of them had the right to use certain poles of the other on the streets of a city, and there being no time fixed for the termination of the contract, and it being in contemplation of the parties that it would not be, and was not intended by either party to be fully performed within one year and in fact was not performed in one year, the court held that the statute of frauds

above quoted applied and that such a contract was within the inhibition of the statute.

The court in that case, after citing authorities holding to the general doctrine that contracts for the performance of which no time is fixed, but which from their subject matter admit of performance within the year are not within the statute, and other cases holding that even though the contract provides for performance upon the happening of some event which may or may not take place within the year, the contract is not within the statute, then proceeded to say:

"But the facts of this case do not bring it within the rule laid down in this line of authorities; but they do bring it, as we think, well within the principle that a contract is within the statute although no time is fixed for its performance when it is clearly made to appear from the terms of the contract and its nature and the situation of the parties, that it was intended and contemplated by both parties at the time the contract was entered into that it would not and could not be performed by both parties within the year.  Browne on Statute of Frauds, Section 281; McPherson v. Cox, 96 U. S. 404, 24 L. Ed., 746; Walker v. Johnson, 96 U. S. 424, 24 L. Ed. 834; Warner v. Texas & Pacific Railroad Co., 164 U. S. 418, 41 L. Ed. 459; Blanding v. Sargent, 33 N. H. 239, 66 Am. Dec. 720; Kent v. Kent, 62 N. Y. 560, 20 Am. Rep. 502."

We think the rule thus stated in that case is conclusive of this, for the reasons which we have above given showing it was not within the contemplation of the parties that the contract could or would be performed within one year.  Of course it was possible the contract here could have been performed within a year, but the facts and circumstances in evidence clearly show no such result was contemplated by the parties at the time.

But it is argued by counsel for appellee that the new contract made the 1st of August, 1916, abrogated the old contract and that in determining whether the same is within the statute it must be estimated from that time. But that contention overlooks the evidence of the plaintiff himself wherein he says that the contract of August 1, 1916, only changed the amount of his monthly salary, and there was in that modified contract no change or modification whatsoever of the original agreement as to the one thousand dollar bonus.  According to his evidence there was no reference made at that time to the

one thousand dollar bonus, or modifying or changing in any respect the agreement as to same except that he asked Heidrick to put that in writing along with the agreed increase in his salary, and that Heidrick promised to do so, but never did. It is, therefore, apparent that both in his pleadings and in his evidence he is relying upon the alleged agreement of Heidrick made in April, 1915, and not upon any modification thereof in August, 1916, with respect to the one thousand dollar bonus.

It follows from what we have said that under the rule laid down in the case above quoted, which is in accord · with sound reason and wholly consistent with the purposes of the statute, the lower court erred in not sustaining appellant's motion for a directed verdict as to this one thousand dollar item.

It is true appellants did not in their answer plead. and rely upon the statute of frauds and perjuries, but under our rule in this state if a plaintiff relies upon an oral contract which is within the statute, the defendant may get the benefit of the statute under a general denial that there was such a contract. Johnson v. Broughton, 183 Ky. 628; Hocker v. Gentry, 3 Met. 463; Klien v. Insurance Company, 22 K. L. R. 301.

The confusion growing out of the fact that the jury returned a verdict for plaintiff for a larger amount than the pleadings authorized, and the subsequent remitter on the record by the plaintiff of part of the amount found on the claim for special services, may and will be corrected by the court upon another trial, and it is therefore unnecessary for us to consider it.

For the reasons given the judgment is reversed with directions to grant appellant a new trial, and for proceedings consistent herewith.