## Black Mountain Corporation v. Turner.

(Decided Feb. 21, 1936.)

734

B. M. LEE for appellant.

E. L. MORGAN for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This is an appeal from a judgment of the Harlan circuit court for $1,544.38, recovered by Henry Turner, plaintiff below, in an action against the appellant, Black Mountain Corporation, to recover an alleged balance of $3,129.78 and interest, claimed owing upon a coal hauling contract.

The coal corporation has appealed from that judgment, assigning as grounds for its reversal numerous errors alleged committed, which we will consider and dispose of after first submitting, for a clearer understanding of their merit, a brief analysis and summary of the pleadings and evidence, upon which they are urged.

By the record it appears that in March, 1934, Henry Turner filed this action against the defendant company, alleging that he had entered into an oral contract with it in January, 1932, whereby it agreed to pay him 75 cents per ton for coal hauled and delivered, under its written orders, to its employees; that in pursuance and performance of said contract, he had delivered 11,158 tons of coal to its employees, as by it designated, during the years 1932 and 1933, for which a hauling charge was owing of $8,368.50, upon which debt the defendant, Black Mountain Corporation, had, from time to time, paid him various sums, totalling $5,238.72, leaving a balance due thereon of $3,129.78, for which he sought recovery with interest.

Defendant answered denying these allegations of the petition and further affirmatively pleaded that not only had it not made such a hauling contract as plaintiff alleged, whereby it undertook to itself uncondition-

ally pay him for the coal hauled its employees, but that its only connection with any hauling contract had during such two-year period between plaintiff and its employees was an agreement providing that defendant would collect from them, for such coal as was ordered and delivered them, to the extent they might direct it to pay him out of their wages, upon this coal hauling account, and for which collection service defendant pleaded it was agreed that it should deduct a 5 per cent. commission upon the amount collected and paid over to plaintiff.

Plaintiff filed reply, denying this affirmative matter of the answer, which completed the pleadings.

In support of the issues thus made, the plaintiff's evidence is that in January, 1932, he, accompanied by one J. T. Middleton, conferred with defendant's then superintendent, E. B. Childers, as to his obtaining the company's hauling contract, when, he contends, they entered into an oral contract whereby the appellant agreed to itself pay plaintiff on every semi-monthly pay day, at the rate of 75 cents per ton load, for all coal hauled under its orders by him to its employees during each previous two weeks' hauling period. Plaintiff's evidence tending to support his claim of having made such a contract with the defendant, through its superintendent, Childers, upon this occasion, is confined practically to the testimony given by the one witness, J. T. Middleton, who stated that he only was present upon this occasion when he heard and witnessed the transaction he testifies was then had between Turner and Childers, acting for the company, when the claimed new hauling contract was then made by them, upon the unconditional terms of payment alleged by plaintiff.

On the other hand, and against such contention, the evidence heard for defendant is that appellant's then superintendent, Childers, with whom the contract sued on is alleged to have been made in January, 1932, on behalf of the company, died in August, 1932 (or nearly two years before this action was brought on the contract claimed made with him), and upon such ground appellant objects to the competency of the evidence of plaintiff's witness Middleton, as being then his partner and who was (it is admitted) the only one, other than

the participating parties, Turner and Childers, who heard what was said by them in making the contract here sued on as an unconditional agreement on the part of the mining corporation to pay Turner 75 cents per ton for all coal hauled under its orders to its employees. less a 5 per cent. commission the company was to retain for its services rendered in collecting and paying over such amount to Turner.

Defendant stoutly contends that Turner introduced no competent evidence whatever in support of his contention that the alleged unconditional contract sued on was ever in fact made with the company through its superintendent, Childers. It contends that the testimony of Middleton, introduced as plaintiff's only witness to prove that there was such a contract entered into, was incompetent for the reason that Middleton was himself, as well as Turner, an incompetent witness as to Turner's alleged making of this contract with the deceased Childers for the reason that he was, at the time it is claimed the contract was made, a partner with Turner in the ownership of the hauling equipment and business and was, as such, equally interested with Turner in obtaining the hauling contract here sued on.

However this may be, and even conceding (as was found by the trial court) that Middleton was not at the time a partner in the hauling business and therefore disinterested and competent as a witness, his testimony, when introduced as a witness by Turner to prove the contract, is as follows:

"Q. 8. Were you present there in January, 1932, when Henry Turner made this contract with Mr. Childers, superintendent of Black Mountain Corporation? A. Yes sir.

"9. And after he had taken it back from Dan Evans? A. Yes sir.

"10. Go ahead and tell what that agreement was.

"Defendant objects; Court overruled; defendant excepts.

"A. Well, Mr. Childers told Mr. Turner wouldn't it suit him better for him to o. k. and get 5 per cent commission on it. I believe that was the words he said to Mr. Turner.

"11. What was he giving them for hauling each load of coal? A. At first he was paying seventy-five cents a load, and that commission would cut it down to seventy. I never did figure it, but the commission was 5 per cent.

"12. Did you know what the commission was for? A. No sir; he said that he would o. k. it, and see that he got his money. That was the words he said.

"13. Now, after, did Mr. Turner, while that contract of delivery was in effect, collect under the contract? A. Yes sir.

"14. When did he start? A. He started in 1932."

On cross-examination he was asked:

"19. You tell the jury that Mr. Childers told him, if he would give him 5 per cent. he would guarantee these accounts? A. Absolutely.

"20. What did he say about it? A. He said he would o. k. them at 5 per cent commission.

"21. What do you mean by o. k. them? A. He meant he would get what was coming to him.

"22. There was no o. k. on any of these? A. That was the agreement he made.

"23. And you mean to tell this jury that Mr. Childers told Henry Turner in your presence that he would guarantee the payment of all these loads of coal that was hauled, for 5 per cent on the amount? A. Five per cent on the dollar commission; yes sir, that was what he said.

"24. Did he take out the 5 per cent on each one of these bills? A. It shows there on the statement what he took out."

Appellant contends that this, the only evidence introduced by the appellee Turner to establish the making of the contract sued on, at best tended to show only an oral promise made by Childers, the deceased superintendent, "to answer for the debt, default or misdoings of another," and upon which, it being an oral contract unevidenced by any signed memoranda, no en-

forceable action could be brought thereon under the statute of frauds (section 470. Kentucky Statutes), which so expressly provides.

After a mature consideration of this contention, we are led to conclude that this evidence given by Middleton, that if the contractor "would give him 5 per cent. commission, he would guarantee these accounts," is not susceptible of any construction other than that it was a promise made by Childers to answer for the debt and default of the company's mining employees. Middleton's testimony is not to the effect that Childers said that the company would pay or that he promised to pay as its primary obligation 75 cents a ton for the coal hauled under contract to the company's employees, but that "he said he would o. k. it, and see that he got his money." Also, on cross-examination, as set out supra, he stated "that Mr. Childers told him, if he would give him 5 per cent., he would *guarantee* these accounts."

An oral promise to *guarantee* the payment of an account, it must be conceded, has but one definite and fixed legal meaning and is therefore not susceptible of any construction other than that of clearly expressing and manifesting the promisor's intention to answer for the debt or default of another. The settled rule being, that the intention of the parties is the test for determining the character of the promise given, as to whether it is to be construed as an original or a collateral promise, it follows that where the language can be interpreted as having but one meaning, or can evidence but one intent, other evidence, showing the circumstances, etc., under which the promise was thus made, is not required for ascertaining the parties' intention.

As so declaring the rule, see the very comprehensive annotation on this question given in 99 A. L. R., pages 79 to 122; Thwaits v. Curl, 6 B. Monroe 472; Brown v. Weber, 38 N. Y. 187; Bonner & M. Co. v. Hansell, 189 Ill. App. 474; Gill v. Herrick, 111 Mass. 501; Housley v. Strawn Merchandise Co. (Tex.) 291 S. W. 864.

However, on the other hand, if any doubt remains as to the import of the language used, it is held that

resort may be had to evidence showing the circumstances of the case under which the promise was made, to help ascertain the intent of the parties. Clay v. Walton, 9 Cal. 328.

Appellant further forcefully contends that Childers' alleged promise to O. K. this hauling account sued on was unenforceable as coming within subsection 7 of section 470, Kentucky Statutes, upon the ground that it was a contract not to be performed within a year from the making thereof, in that it is shown the parties here contemplated operating under the claimed contract beyond such length of time or for an indefinite period. However, this latter contention we are of the opinion is not meritorious or to be sustained, in that at most Middleton's evidence would show only a contract to be continued during the mutual will and wish of the parties, but which might be terminated at any time, and being of such indefinite character, it has been repeatedly held not to be embraced by or come within such section of the statutes. Frankfort & C. Ry. Co. v. Jackson, 153 Ky. 534, 156 S. W. 103; Kelly v. Peter & Bourghard Stone Co., 130 Ky. 530, 113 S. W. 486; Nickell v. Johnson, 162 Ky. 520, 172 S. W. 938.

However, having reached the conclusion that the alleged oral promise of Childers to O. K. or guarantee the hauling account clearly comes within the inhibition of subsection 4 of the Statutes, as being a promise to answer for the debt of another, and was, as such, unenforceable, and that such defense thereto having been raised by demurrer and also by general denial filed by appellant, it follows that the court erred in not sustaining appellant's demurrer to the petition. Simpson v. Peavyhouse, 207 Ky. 155, 268 S. W. 814; Cumberland & M. R. Co. v. Posey, 196 Ky. 379, 244 S. W. 770.

Having reached this conclusion, that the oral contarct sued on was unenforceable for the reasons stated, it becomes unnecessary to discuss the further points and objections raised by defendant, which are reserved without expression of opinion.

Judgment reversed.