## KIRBY et al. v. SCROGGINS.

Court of Appeals of Kentucky.
Feb. 15, 1952.

------

E. H. Walton, Robert O. Lukowsky, Covington, Ky., for appellants.

O. M. Rogers, Covington, for appellee.

SIMS, Justice.

H. L. Kirby brought this action against Irvin Scroggins on an oral contract solely to enjoin him from removing certain feed crops from the Kirby farm in Boone County. The answer was a general denial. By counter-claim and cross-petition against Mrs. Kirby, Scroggins averred the Kirbys were indebted to him in the sum of $1,676.58 on an oral contract for an indefinite time which was quite different from the contract upon which Kirby sought an injunction.

As there were many items involved in this controversy, it was referred to the master commissioner to hear proof and to report. After hearing considerable proof, Hon. A. D. Yelton, Master Commissioner of the Boone Circuit Court, reported the Kirbys were indebted to Scroggins in the sum of $1,535.97. The Kirbys filed exceptions to this report which were overruled. On this appeal they insist: (1) A written memorandum Kirby drew on Feb. 7, 1948, which was never signed, incorporated the true agreement between the parties; (2) if not, then any breach of the contract by Kirby was waived by Scroggins in a new contract the parties entered into on Aug. 16, 1948; (3) the damages allowed are excessive.

The contract between the parties concerned the operation of a dairy and the growing of certain crops for cow feed. Kirby insists the agreement was to extend for a year from March 1, 1948, and Scroggins and his family would move on the Kirby farm, furnish 16 cows to match that number owned by Kirby and the 32 cows would be looked after and milked by Scroggins, and they would share equally the proceeds from the sale of the milk. Scroggins was also to grow certain crops on the farm owned by the Kirbys. Kirby admits he mentioned building a new dairy barn and a five-room modern house for Scroggins to occupy, but denies the construction of these buildings was part of the contract.

Scroggins pleaded he furnished only 8 cows and under the contract was to furnish 8 additional cows when the new dairy barn was built, which was to be completed by Kirby not later than June 1, 1948. Kirby never built the barn and refused to divide the June and July milk checks equally with Scroggins because the latter had not increased his cows to 16, thus making his milking herd equal in number to that of Kirby. On Aug. 16, 1948, the parties agreed their joint milking herd would be 16 cows, 8 furnished by each of them, from which they would divide the proceeds of the milk equally. Kirby contends this agreement of Aug. 16th was a novation of their original contract, while Scroggins insists Kirby forced an ultimatum upon him as to a division of the milk which he was compelled to accept.

Kirby never built the five-room house and Scroggins and his family were forced to occupy rooms over the Kirby garage. Scroggins found this inconvenient. Also, he complains the barn roof leaked, water ran into it, and the barn was not a fit place in which to milk. On Dec. 3, 1948, without notice to Kirby, Scroggins left the farm and was about to remove his part of the feed crops when Kirby enjoined him. The commissioner and chancellor thought, as do we, the contract was that Kirby would build a new barn by June 1st, and build the house within a reasonable time, both of which he failed to do.

The contract sued on was not reduced to writing and as it was entered into on Feb. 7, 1948, to extend from March 1, 1948, to March 1, 1949, it could not be performed within one year and was within the statute of frauds, KRS 371.010(7). It was not necessary for Scroggins to plead this statute since the answer denied he made the contract Kirby sued on. Cumberland & M.

R. Co. v. Posey, 196 Ky. 379, 244 S.W. 770; Williamson v. Stafford, 301 Ky. 59, 190 S.W.2d 859; and the many authorities cited therein. The contract alleged in the counter-claim covered an indefinite period, therefore was a contract at will and could be terminated at any time by either of the parties. Braddon v. Three Point Coal Co., 288 Ky. 734, 157 S.W.2d 349, which was cited with approval in Bobbitt v. Hoffman, 304 Ky. 196, 200 S.W.2d 303, page 306.

Appellants insist in their brief the change in the agreement on Aug. 16th, wherein each party was to furnish 8 cows and appellee was from that date only to milk and feed 16 cows, amounted to a novation. The answer to this argument is that novation was neither pleaded nor proven by appellants. A novation is a substitution of a new contract for an old one which is thereby extinguished. 66 C.J.S., Novation, § 1, p. 681. The same text, § 25, p. 712, states: "Novation must be pleaded either expressly or by unequivocal implication"; and the next section says the burden of proof is on the party pleading novation.

We now come to the amount of damages reported by the master commissioner and allowed by the chancellor. There can be no doubt that $599.29 is due Scroggins as his half of the milk checks appellants withheld. The other items making up the balance of the judgment of $1,535.97 rendered in behalf of appellee consist of hay, oats, corn in crib and ensilage left in the silo, which appellants appropriated; also, appellants' half of the cost of certain commercial feed bought for the cows. The proof is conflicting both as to the amounts and value of this feed, but it suffices to say the proof abundantly supports the report of the commissioner and the judgment of the chancellor, and we will not disturb it. A finding of fact by the commissioner upheld by the chancellor will not be reversed unless this court is clearly convinced it is erroneous. Damron v. Bartley, 302 Ky. 83, 194 S.W.2d 73; Corbin's Ex'rs v. Corbin, 302 Ky. 208, 194 S.W.2d 65; Jones v. Jones, 313 Ky. 367, 231 S.W.2d 15.

The judgment is affirmed.