**Maude SWAFFORD et al., Appellants,**

v.

**E. W. MANNING et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 22, 1954.

T. T. Burchell, Manchester, for appellants.

Charles C. Smith, Eugene Clark, Manchester, Stephens Combs, Jr., Whitesburg, for appellees.

MOREMEN, Justice.

Appellant, Maude Swafford, individually and as executrix of the estate of her deceased husband, G. G. Swafford, filed complaint against appellees, E. W. Manning and his wife, Eunice Manning, by which she sought to enforce payment of a note in the principal sum of $3,000 secured by a mortgage executed by appellees. No defense was offered by E. W. Manning, but appellee, Eunice Manning, pleaded that she signed the note only as surety for the debt represented by the note and secured by the mortgage on her property; that it was entirely the obligation of her husband who received the money, and that she had received no benefit from the proceeds whatsoever. She relied on KRS 404.010(2), which provides that no part of a married woman's estate shall be subjected to the payment of any liability upon a contract made after marriage to answer for the debt of another, including her husband, unless the estate has been set apart for that purpose by a mortgage or other conveyance. (This section has been amended since this action arose. See Chapter 21, Acts of 1954.) There are some minor collateral issues in the case but neither party has briefed them and we, too, believe that the single question of whether or not the wife was a surety is decisive of the case.

The circuit court held that the wife was in fact surety, and while he adjudged that her interest in the mortgaged property should be applied to the satisfaction of the debt, the court refused to grant a personal judgment against Eunice Manning. Brady, v. Equitable Trust Co. of Dover, 178 Ky. 693, 199 S.W. 1082.

Since this case turns on a question of fact, we will give a summary of the evidence adduced. E. W. Manning testified that Preacher Sizemore had made arrangements with G. G. Swafford to lend the money to him (Manning) and, on December 16, 1946, he went to the Swafford home with Gib Hobbs, Preacher Sizemore and his wife, Eunice Manning, where a note and mortgage were executed after Mrs. Manning had been told that when a husband borrows money on real estate, it is necessary for his wife to sign also. It had been stipulated by the parties, inter alia, that the proceeds of the loan were given to Mrs. Manning in the form of a $3,000 check. When asked why this was done, appellee stated that he was drinking at the time and requested Swafford to make the check payable to her because he "did not want to fool with it." He further testified that he had no bank account but that his wife had. On the following morning she took the check to the First National Bank, cashed it, deposited $1,500 in the bank and brought $1,500 out in front of the bank where he was sitting in a car with his friend, Gib Hobbs. She turned the cash over to him, was taken home, and Manning and Gib Hobbs went to Cincinnati and in the surrounding territory dissipated the money by drinking and gambling. He returned in a day or two and subsequently spent the balance of the money and considerably more, which he obtained from his wife, in a drinking spree which lasted for over a year. He was amply corroborated in his story by his cronies who hung around his shop and joined in his spree. Eunice Manning corroborated his story in nearly all particulars and testified that she had received no benefit from the money whatsoever. It appears rather certain in the record that whenever he wanted money, she drew cash from the bank and delivered it to him. She testified she thought she was signing the note only as surety and that she would not be obligated beyond the extent of her mortgaged property.

Evidence offered by appellant is not in strict contradiction. Appellant Maude Swafford, widow of G. G. Swafford, stated that on the date the money was borrowed, Eunice was writing out the mortgage. When asked if it was her understanding that Eunice was signing as principal, she responded, "She was writing it out all right, she did the writing." Ray Swafford, son of Martha Swafford, testified that he was with his father when he went to attempt to collect from E. W. Manning. He said: "Well he tried to get Edward to pay—he was behind on the interest on the note, and Edward hemmed and hawed and put him off an told him he might see his wife, she might get him up some money and the old man said, 'Well, she is the one who got the money anyway, she is the one who got that loan.' talked like he ought to have seen her in the first place." No other evidence of substance was introduced on this question.

■ This court has long recognized the rule that a finding of fact by the chancellor will not be reversed unless this court is clearly convinced that it is erroneous. Kirby v. Scroggins, Ky., 246 S.W.2d 453. Under CR 52.01 findings of fact shall not be set aside unless clearly erroneous.

■ After we have considered the evidence, under the foregoing rule, we are constrained to follow the judgment of the chancellor.

Judgment affirmed.