## HELLER *v.* DAILEY ET AL.

[No. 3,537.    Filed April 2, 1902.]

NATURAL GAS.—*How Ownership of Gas and Oil Acquired.*—By reason of the fluidity and elusiveness of petroleum and natural gas, the absolute ownership thereof within and under land cannot be acquired without reducing the oil and gas to actual control.  *pp. 560, 561.*

SAME.—*Nature of Gas and Oil Lease.*—A contract of a landowner, by the terms of which he grants to another "all the oil and gas in and under" a certain tract of land, and providing penalties for delay in the drilling of the wells, is an assignable interest in the land and must be in writing.  *pp. 560-572.*

SAME.—*Real Estate.—Contract.—Surrender of Interest Must be in Writing.*—A grant of such an interest in land cannot be surrendered without a writing sufficient for the conveyance of real estate.  *pp. 566, 567.*

SAME.—*Assignment of Lease.*—The assignment of an oil and gas lease does not relieve the assignor from liability on an express covenant therein.  *pp. 567-572.*

From the Wells Circuit Court; *J. W. Headington,* Special Judge.

Suit by Lemuel Heller against Michael Dailey and others to enforce the covenants of an oil and gas lease. From a decree for defendants, plaintiff appeals. *Affirmed in part and reversed in part.*

*G. Mock, J. Mock* and *L. Mock,* for appellant.

*J. S. Dailey, A. Simmons, F. C. Dailey, A. L. Sharpe, C. E. Sturgis* and *Mason & Mason,* for appellees.

BLACK, J.—The appellant, Lemuel Heller, in March, 1899, sued the appellees, Michael Dailey, Frank Eddington, Orlando H. Britton and Frederick E. Britton. There was another defendant, Frank L. Waring, whose death was suggested pending the proceedings in the court below, without substitution of a representative. The action was upon a written contract, dated April 22, 1896, signed and acknowledged by the appellant and the appellees Dailey and Eddington, by the terms of which the appellant, of the first part, granted to the appellees Dailey and Eddington, of the second part, "all the oil·and gas in and under" a certain tract of eighty acres of land, with the right to enter thereon at all times for the purpose of drilling and operating for oil or gas, to erect structures, lay pipes, etc., excepting and reserving to the appellant the one-sixth part of all oil produced and saved from said premises, to be delivered, etc.; "to have and to hold the above premises on the following conditions: If gas only is found, second party agrees to pay $200 each year for the product of each well while the same is being used off the premises, and the first party to have gas free of cost to heat all stoves in dwelling-houses and for domestic purposes during the same time. When first party shall request it, second party shall bury all oil and gas lines and pay all damages to growing crops by reason of burying or removing said pipe lines or other operations. In case no well is completed within sixty days from this date, then this grant shall be null and void, unless second party shall pay the said first party $1 per day in advance for each day thereafter such completion is delayed. The second party shall have the right to use sufficient gas and oil or water to run all machinery for the operation of said wells, and also the right to move all its property at any time; and it is further agreed by the party of the second

part that they shall drill a well at the rate of one well every sixty days after date, until five wells are completed. In case any well is not completed in said sixty days as above provided for, parties of the second part shall pay $1 per day in advance until said well is completed. It is understood between the parties to this agreement that all the conditions between the parties hereunto shall extend to their heirs, executors and assigns."

It was alleged in the complaint that on the 22nd of April, 1896, the appellee Eddington assigned in writing all his interest in the lease to the appellee Dailey, who on the 28th of the same month assigned in writing an undivided one-half interest therein to the defendant Waring; that on the 17th of June, 1896, the lease with these assignments was duly recorded, etc.; that Dailey and Waring assigned the lease to the Capitol Oil Company, which had since gone into the hands of a receiver and had become defunct; that the receiver sold and assigned the lease to the appellees Britton and Britton, "who accepted the same and took and now hold possession of the said lease and premises;" that pursuant to the lease the defendants drilled two wells on the premises within 120 days, "but have failed to either drill, complete, or construct any other wells thereon or to pay the rental for the delay in the construction of the remaining three wells." The amount of the "daily rental" alleged to have accrued under the lease on each of these three wells not drilled was averred, all of which it was alleged remained unpaid and due the appellant from the defendants, and judgment was demanded for the amount thereof.

The answer of Britton and Britton was a general denial. Dailey and Eddington each filed an answer in seven paragraphs. The appellant relies for the reversal of the judgment upon alleged error in overruling his demurrers to the third, fourth, and fifth paragraphs, severally, of each of these answers, and in overruling his motion for a new trial.

In the third paragraph of each answer it was pleaded, in

substance, that before the expiration of 180 days from the execution of the lease, and when it was owned by Dailey and Waring, and when no rent was due upon it, by mutual consent and agreement between the appellant and Dailey and Waring, the lease was surrendered by them to the appellant, and he, in consideration of the surrender, released the parties to the lease and their assigns from the payment of rent thereafter.

In the fourth paragraph of each of the answers, the pleader alleged in substance that at a designated time, when no rent was due, the owners of the lease, Dailey and Waring, accepted a proposition of the lessor that, if Dailey and Waring would assign it to the Capitol Oil Company, he would accept that company for and instead of the lessees and Waring, and would release them from any further obligation under the lease; and that the owners of the lease did assign it to that company, which then and there took possession of the premises under the lease.

In the fifth paragraph of the answer of Dailey, he alleged, that before the completion of the second well, in 1896, he was about to sell the lease to the Capitol Oil Company, and was negotiating with Dye, agent for that company, for such sale; that Dailey in company with Dye called upon the appellant, and Dailey informed the appellant of such negotiation and that such sale would be made if satisfactory to appellant and if he would discharge Dailey, Eddington and Waring from liability accruing under the lease thereafter; whereupon appellant informed Dye and Dailey that he would be glad if such sale would be made, and that he would release said defendants from all liability under the lease; that in pursuance of said agreement said defendants did sell and assign the lease to the Capitol Oil Company; that Dailey would not have so sold and assigned the lease but for the appellant's promise and agreement to discharge him from liability under the lease; that in pursuance to said sale the company took possession of the premises and

Heller *v.* Dailey.

the oil well thereon, and drilled and constructed an additional oil well thereon, and operated said wells and produced oil therefrom, and paid appellant a share of oil produced from the wells as rental and royalty according to the terms of the lease, which rental and royalty the appellant accepted; and that at the time of such sale to the company there was no rental or other liability due in favor of the appellant against Dailey under the lease, and all rentals and other sums under the lease up to that time had been fully paid.

In the fifth paragraph of Eddington's answer, he alleged an agreement and promise of the appellant, prior to 180 days from the date of the lease, that if the lease were sold and assigned to Dye, the appellant would discharge the lessees and Waring from liability and rentals thereafter accruing; that pursuant to that agreement, the owners of the lease sold and assigned the lease to Dye and surrendered to him the possession of "the same;" and that neither of "said defendants have since said date owned any interest in said lease."

It may not be wholly irrelevant to remark that in each of these answers the first paragraph was a general denial, and the second, an answer of payment; that a demurrer to the sixth paragraph of each answer was sustained; and that the seventh paragraph of each answer, to which no demurrer was addressed, was in substance like the fifth paragraph of the separate answer of Eddington, above mentioned, except that the assignment was represented as having been made to the Capitol Oil Company.

In cases involving contracts relating to the finding and taking of oil and gas from land, it is not always easy to state or to apply legal definitions. We must seek for practical results, not inconsistent with the principles of law relating to analogous matters, but maintaining so far as may be the rights of parties to contract with reference to their own property.

By the terms of this contract the landowner "grants" to Dailey and Eddington "all the oil and gas in and under" the land, with the right to enter upon the land at all times for the purpose of drilling and operating for oil or gas, and to erect and maintain all buildings and structures and to lay all pipes necessary for the production and transportation of the oil or gas taken from the land, excepting and reserving a certain portion of the oil produced. No other interest in the land is transferred, the right of the landowner to cultivate the soil being recognized. The contract is not in the form of a lease of the land, or any portion of it, for years or for life or in perpetuity, with an accompanying right, as an incident of the letting, of taking the oil and gas beneath the surface.

Where a thing is mentioned in the premises of a deed as the thing granted, and another thing is mentioned as the thing granted in the *habendum*, unless that which is newly so mentioned is impliedly mentioned in the premises it will not pass. Elphin. Inter. of Deeds, 212-213.

The grant is not limited to any period of time, though, as in the case of a grant of the coal in certain land, it would cease to be operative whenever it should be found that no oil or gas was beneath the soil, or none that could be taken with benefit; whereas a lease of land, properly so called, would continue in force according to its provisions until the end of the term. The contract is in effect a grant of the right to take all the oil and gas that may be found and taken by making wells as prescribed upon the particular tract of land, with accompanying incidental rights to do, as indicated in the contract, upon the surface, those things needed for the enjoyment of the principal right so to take oil and gas. It confers rights not limited as to time, unless it be as to the indefinite period within which oil or gas may be taken advantageously under the conditions prescribed. The right to take all the oil and gas in and under the land is in its nature an exclusive right. It is inconsistent with a right in

the grantor or others under him to take any of the oil or gas
from beneath the designated land, at least through wells
drilled upon that land.   The oil and gas in their free and
natural state within the land constitute a part of it, though.
they be fluent and liable to depart to other land, there to
be taken into possession through wells made for such pur-
pose.   The right to take such minerals from the land consti-
tutes an interest in the land.   The instrument under consid-
eration does not create a mere personal privilege to take the
minerals from the land.   It is an exclusive and assignable
interest in land.   If with propriety it can be called a license,
it must be a license coupled with an interest in land.   By
its terms the contract is a grant of the minerals in and under
the land.   If by such general terms all of a specified solid
mineral, as coal, in and under the land were granted, it
would be a grant of real estate (*Plummer* v. *Hillside, etc.,
Co.,* 160 Pa. St. 483, 28 Atl. 853); but because of the
fluidity and fugitiveness of petroleum and natural gas the
absolute ownership of these mineral substances within the
land can not be acquired without reducing them to actual
control; so that a distinction must be and is made between
these elusive minerals in and under the ground and the solid
minerals in place in the earth.   Therefore, a grant of all
the oil and gas in and under a tract of land is not a grant of
any particular specific substance as would be a grant of the
coal in and under certain land.

The owner of land is not by virtue of his proprietorship
thereof the absolute owner of the oil and gas in and under
it, in its free and natural state, not yet reduced to actual
control of any person, but he together with the other owners
of land in the gas field has a qualified ownership, consisting
of or amounting to his exclusive right to do what may be
done on, through and under his land (as making of wells)
necessary to reduce the minerals to his possession, and by
thus acquiring the exclusive control to become the owner

of the mineral substances as his personal property, observing due regard in his operations to the like enjoyment of such exclusive right by all other landowners in like circumstances. This exclusive right is his private property. He can not grant more than he owns; therefore, by granting all the oil and gas in and under his land, he does not grant more than a right to reduce to ownership the oil and gas which may be obtained by operating on the land, whereby substances which at the time of the making of the grant may be in and under lands of other surface proprietors may come into rightful ownership of the grantee as his personal property.

Though, because of the peculiar nature of oil and gas, a corporeal interest in them in place can not be created, and title to the specific mineral substances can not be acquired without the reduction of them first to personal property, yet the exclusive and assignable right to do this, with the accompanying rights necessary to such accomplishment, constitutes, not a privilege revocable before it has been acted upon, but a subsisting, exclusive, assignable and irrevocable right which accrues upon the execution of the written instrument of conveyance and before any action has been taken thereunder. The right so created is not susceptible of livery of seizin, and is in the nature of an incorporeal hereditament. See *Funk* v. *Haldeman*, 53 Pa. St. 229.

The contract before us can not be regarded as a lease of land for three years or less, or as a lease of land ineffectual because of uncertainty or indefiniteness of duration of term; and occupancy thereunder can not be regarded as a tenancy from year to year; but the interest granted is properly to be considered as an interest in land within the meaning of our statutes.

In *Heal* v. *Niagara Oil Co.*, (1898) 150 Ind. 483, the court discusses a gas and oil lease made by a married woman, in which her husband did not join. The

form of the premises of the instrument is not stated. It was said in the court's opinion to be a lease for one year from a specified date, which contained a provision relating to payment at a certain rate per year for delay in completing a well. No well had been drilled. It was said that for the purpose of prospecting, such leases involve a mere use and part with no greater interest in the freehold than the ordinary agricultural lease, and that for the purpose of vesting an exclusive right of prospecting or operating for gas and oil, a married woman has power to lease without the joining of her husband, as without her husband she may lease her separate land for agricultural purposes; it being provided by statute that all the rents, issues, income, and profits of a married woman's estate shall be and remain her separate estate and under her control the same as if she were unmarried. It was said that no question was involved as to the effect of the instrument to carry a freehold estate. In the course of the opinion it was said that leases of such character may carry a substantial and enduring interest in the freehold, but that in their primary effect they part with no immediate title or estate and carry but right of exploration, any title or estate which may be contemplated remaining inchoate and of no effect until oil or gas is found.

In *Columbian Oil Co.* v. *Blake* (1895), 13 Ind. App. 680, the action was for a recovery of rents upon a written contract executed by the plaintiff, a married woman, her husband not joining therein. The defendant, an assignee, sought to relieve itself from liability on the assumption that the contract was void under the statute which provides that a married woman shall have no power to encumber or convey her real estate except by deed in which her husband shall join with her. The contract was in some respects like the one before us (though having more of the ordinary features of a lease), being a grant of all the oil and gas in and under the described land, with right to enter at all times for the purpose of operating for oil or gas, to erect and main-

tain buildings, lay pipes, etc.; "to have and to hold the above premises on the following conditions," etc., these words being followed by provisions like those in the contract before us relating to gas, the burying of pipes, the payment of damages to crops, the right to remove property, etc. There was a stipulation that for failure to drill a well as prescribed, the party of the second part should pay annually thereafter $5 *per acre*, until the well should be completed, it being provided also that the party of the first part "leases one acre anywhere out of" the land for a test well, and that if oil or gas should be found, then the party of the second part "has the balance" of the land to drill at the same royalty, etc.; and it was provided that all the conditions of the contract should extend to the heirs, successors, executors and assigns of the parties. It was held, that the oil and gas in the earth were part of the land, and that the contract was void as a conveyance by the married woman of her real estate.

While, for reasons which we have sought to state, we do not regard the contract in suit as a grant of land, or as a lease properly so called, but do regard it as a grant of a right in the nature of an incorporeal hereditament, operative from the time of its execution and during the accomplishment of its purpose as a transfer of an exclusive right to search for, take and appropriate the minerals mentioned in the instrument, under whatever technical common law term it may most properly be classed, it must be held to be a conveyance of an interest in land within the meaning of our statutes.

Whether the contract before us be regarded as a grant of an incorporeal hereditament and governed by the rules applicable to such grant, or be considered as a lease of land, all the answers in controversy before us must, we think, be held insufficient.

Our statute provides: "Conveyances of lands or of any interest therein, shall be by deed in writing, subscribed,

sealed, and duly acknowledged by the grantor or by his at-
torney, except *bona fide* leases for a term not exceeding
three years." §3335 Burns 1901; *Schmitz* v. *Lauferty,* 29
Ind. 400; *Railsback* v. *Walke,* 81 Ind. 409; *Peters* v.
*Barnes,* 16 Ind. 219.

The word "grantor" in this statute embraces every per-
son by whom any estate or interest in lands is created,
granted, bargained, sold, conveyed, transferred or assigned.
§3375 Burns 1901. The word "land" in our statutes in-
cludes "lands", "tenements" and "hereditaments". §§241,
1309 Burns 1901. It is not necessary to use the words
"heirs and assigns" to create in the grantee an estate of in-
heritance. §3348 Burns 1901. The affixing of a private
seal is not necessary to give validity to any conveyance of
lands or any interest therein by a natural person. §3421
Burns 1901.

Our statute of frauds provides, that no action shall be
brought upon any contract for the sale of lands unless the
contract or some memorandum or note thereof shall be in
writing and signed by the party to be charged therewith, or
by some person thereunto by him lawfully authorized, ex-
cepting, however, leases not exceeding the term of three
years. §6629 Burns 1901; *Railsback* v. *Walke,* 81 Ind.
409.

At common law, corporeal hereditaments were demisable
without deed or writing, the lease being perfected, in the
case of a demise for years, by the entry of the lessee, and by
livery of seizin in the case of a lease for life; but a deed
was always required for the conveyance of incorporeal
hereditaments. The provision of the first section of the
English statute of frauds (29 Car. II. ch. 3) that leases not
in writing should have the effect of leases at will, left un-
touched leases of incorporeal hereditaments. 2 Platt
Leases, 1, 2.

At common law, a lease of corporeal hereditaments might
be surrendered to him who had the reversion or remainder

without deed, writing, or livery; but a deed was indispensable to a surrender of incorporeal hereditaments. 2 Platt Leases, 499. At common law, a lease for years or for life might be surrendered by parol or by operation of law. *Lynch* v. *Lynch*, 6 Irish L. R. 131; 18 Am. & Eng. Ency. of Law, 338.

Incorporeal hereditaments, the conveyance of which could not be evidenced and accompanied by livery of seizin, but lay only in grant, always at common law could pass only by deed, and could not be surrendered by operation of law. Brown St. of Fr., §§2, 5; Reed St. of Fr., §767; Washb. Real Prop., §552; *Lyon* v. *Reed*, 13 M. & W. 285; Wood Landlord & Tenant (2nd ed.) 1154, and notes.

By section three of the English statute of frauds it was provided, that "no leases     *     *     *     shall be assigned, granted or surrendered, unless it be by deed or note in writing signed     *     *     *, or by act and operation of law." After the enactment of this statute, which introduced no change as to incorporeal hereditaments, they could not be surrendered except by deed. *Lyon* v. *Reed*, 13 M. & W. 285; 2 Platt Leases, 503; Brown St. of Fr., §§2, 5. The common law in respect to the surrender of leases must be regarded as in force in this State, except so far as it is modified by our own statutes. §236 Burns 1901.

Our statutes do not contain, as do those of some of our states, any express, separate provision relating to assignments or surrenders of leases, corresponding to the third section of the English statute. But our statutes contain nothing expressly or by necessary implication forbidding surrender by act and operation of law, and construing our express requirements concerning conveyances as relating to transfers by contract, and as including surrenders in fact, we may hold that such surrenders as properly come within the meaning of the words "by act and operation of law" as used in the British statute of frauds and in similar statutory provisions of sister states, may be upheld in this State. The

provision of the English statute for surrender by act and operation of law was but a statutory recognition of a common law method.

It seems sufficiently plain that an interest in land lying only in grant or a term, unless it be for three years or less, can not be surrendered by express contract, that is, can not be transferred or yielded up by surrender in fact, without a writing sufficient for the conveyance of an interest in land greater than can be created by parol. See 18 Am. & Eng. Ency. of Law, 358; McCall Real Prop., 95, 96; Taylor Landl. and Ten., §509; Wood Landl. and Ten., §§488, 494; 1 Washb. Real Prop. (5th ed.), 579; *Peters* v. *Barnes*, 16 Ind. 219; *Ross* v. *Schneider*, 30 Ind. 423.

There has been a diversity of decision both as to the facts which may constitute a surrender by operation of law and as to the legal principles applicable thereto. We will not undertake to discuss the general subject, but will confine our observations to the instance of a substitution of tenants and to the case where there has been an assignment by the lessee to a third person. If the law will imply a surrender in a given case, it would seem to be reasonably clear that the implication will arise from the acts of the parties, and will not be based upon proof of an oral agreement between lessor and lessee. The one, whether lessor or lessee, against whom such a surrender is asserted by the other, must have been a party to some action from which a surrender may properly be presumed by the court. The surrender should be indicated by acts. We will not pause to seek to reconcile the various opinions as to the principle of law on which this conclusion of the court should proceed.

If the lessee assign to a third person and the lessor accept rents from the assignee in peaceable possession, it may be presumed from this act of the lessor in accepting the rent due from his lessee through the hands of another in possession, that the lessor acquiesces in the assignment, but such conduct does not necessarily indicate that the lessor has

been a party to the creation of a new tenancy. Such facts may constitute evidence of an assignment but not of a surrender, and if a surrender may be established by the further proof of a parol agreement between the lessor and the lessee, to which the assignee was not a party, this would be basing the essential fact constituting the surrender upon parol evidence of an express contract, and not deriving it by act and operation of law.

In *Frank* v. *Maguire*, 42 Pa. St. 77, 82, it is said: "It surely is not necessary to cite cases to prove that a tenant is bound by his express contract to pay rent, even after he has assigned the term with his landlord's assent, and though the landlord has accepted the assignee as his tenant, and received rent from him". See, *Sanders* v. *Sharp*, 153 Pa. St. 555, 562, 25 Atl. 524.

In *Creveling* v. *DeHart*, 54 N. J. L. 338, 23 Atl. 611, an action by a lessor to recover from the lessee for non-payment of rent, a plea was held insufficient which stated that the lessee entered into negotiations with a third party named, and notified the lessor, who encouraged the lessee to sell and assign the lease to a third party, and therefore the lessee duly assigned and conveyed the same to such third party, who entered upon the demised premises and was duly accepted by the lessor as his tenant, and that the lessor collected rent from the assignee and recovered a judgment for rent which afterwards fell due. It was held that to make the plea show surrender in law it needed an averment that the assignee was substituted in place of the original lessee, with the intent on the part of the parties to the demise to annul its obligations.

In *Grommes* v. *St. Paul Trust Co.*, 147 Ill. 634, 648, 35 N. E. 820, 37 Am. St. 248, is the following language: "Nor did the sale of the saloon by the tenant to Ruse, nor the taking of possession by Ruse, nor the acceptance of rent from the latter by the landlord, operate as a discharge of the guarantors. The assignee of a leasehold estate is liable

for the rent according to the terms of the lease, and the fact of his liability after the assignment does not discharge the lessee from his covenant to pay rent. In case the rent is not paid by the assignee as it becomes due, an action may be sustained against the lessee therefor; and it makes no difference, in this respect, that the lessor may have received rent from the assignee, and accepted him as tenant of the premises. (*Shaw* v. *Partridge*, 17 Vt. 626; 12 Am. & Eng. Ency. of Law, 739.) Where there is an express covenant to pay rent for a term of years, the mere acceptance of rent by the lessor from the assignee of the lessee does not discharge the lessee. (*Harris* v. *Heackman*, 62 Iowa 411, 17 N. W. 592.) The contract of the latter continues in force, notwithstanding he may have parted with his interest in the estate, unless the lessor enters into such stipulations with the assignee as to accept him as sole tenant and absolve the original lessee. If there be not a substitution of the assignee in place of the original lessee, and a clear intent to make a new contract with the former and to discharge the latter from further liability under the lease, both will be held liable to the lessor. (*Way* v. *Reed*, 6 Allen, 364.)" See, also, *Hoerdt* v. *Hahne*, 91 Ill. App. 514; *Detroit Pharmacal Co.* v. *Burt*, 124 Mich. 220, 82 N. W. 893; *Charless* v. *Froebel*, 47 Mo. App. 45; *Levering* v. *Langley*, 8 Minn. 107; *Lyon* v. *Reed*, 13 M. & W. 285; *Lynch* v. *Lynch*, 6 Irish L. R. 131; *Lewis* v. *Brooks*, 8 U. C. Q. B. 576.

In *Donahue* v. *Rich*, 2 Ind. App. 540, the lease was for one year. It might have been made by parol and might be surrendered by parol. We do not hold it necessary to show an express contract between the lessor and the assignee, but it seems to be requisite to show that the landlord by his conduct, as between himself and the assignee, does not hold the latter merely to the obligation of an assignee of the term in possession, but has assumed an attitude inconsistent with the continuance of the contract relation between him and

the original lessee, and has treated the assignee as his own tenant by substitution.

It is generally established that the lessee, who before his assignment of the lease to a third person is bound by both the express and the implied covenants of the lease, continues after the assignment to be liable upon his express covenants therein, as if no assignment had been made, and that the assignee is liable to the lessor upon all the covenants which run with the land, for non-performance thereof while the estate is in him, but is not liable for breaches of any covenants which occur before the assignment to him or after his assignment to another, the liability of the lessee after his assignment resting in privity of contract, that of the assignee resting in privity of estate and continuing only while such privity exists, though he remains, after his assignment to another, liable for breaches which he committed while he had the estate. If the assignee hold possession under the lease, or have immediate right to the possession, when any rent falls due, he will continue liable therefor, and will not escape such liability by his subsequent assignment; and this is true whether he became assignee by the act of the lessee or of the lessee's assignee or by act of the law, as by purchase at a sheriff's or a receiver's sale. *Fennell* v. *Guffey*, 139 Pa. St. 341, 20 Atl. 1048; *Aderhold* v. *Oil Well Supply Co.*, 158 Pa. St. 401, 28 Atl. 22; *Edmonds* v. *Mounsey*, 15 Ind. App. 399; *Breckenridge* v. *Parrott*, 15 Ind. App. 411.

The appellees Dailey and Eddington, who would thus be liable as lessees upon their express covenants in a mining lease for breaches thereof accruing after the assignment thereof by them, sought by their answers to show a surrender to the appellant. In none of the paragraphs was a written surrender shown. If we are correct in characterizing the written instrument as a grant of an interest in land, then, not being a lease for three years or less, and being necessarily in writing, it could not be surrendered in fact

without a writing, whether classed as a grant of an incorporeal hereditament or as a lease; and, therefore, it cannot be held that any surrender in fact was properly pleaded. In the third paragraph of each answer it was sought to set up an agreement for a surrender between the lessor and the holders of the lease, one holding an interest therein as lessee and therefore bound by privity of contract, the other having an interest by privity of estate as assignee, and, in consideration of such surrender, a release of the lessees "and their assigns". This pleading can only be regarded as an attempt to show a surrender in fact, and it must be held insufficient for such purpose.

If the surrender had been properly shown to have been made in compliance with the statute, it would have constituted a release of the parties surrendering, they not being further bound by privity of contract or privity of estate.

However the mining contract in question may properly be classed and named, if the principles we have expressed be well supported by reason and authority, it would seem to follow that the apparent purpose of the pleader to show a surrender of a lease by act and operation of law was not accomplished in any of the other paragraphs of answer under examination. If there can be said to have been a reversion and a term which could be merged therein by surrender, the facts stated in these answers do not necessarily go further than to show acquiescence in an alleged assignment and an oral promise to release the lessees and Waring. It is not shown clearly and unquestionably in any of these paragraphs that the assignee was expressly or impliedly anything more than an assignee of the lessees, recognized and treated as such by the appellant, or that there were any dealings or actions between the appellant and the assignees from which the relation of landlord and tenant can be said to have originated contractually. If we could regard the contract as a lease of land for a term, the fifth paragraph of Dailey's answer would alone present any difficulty as an an-

swer of surrender by act and operation of law. It appears, then, that as to appellees Dailey and Eddington the judgment must be reversed upon the pleadings.

We are required to consider the action of the court in overruling the appellant's motion for a new trial as against the appellees Britton and Britton. The action against them was not for use and occupation of land, but it was an action against them as assignees of the written contract for breach of the obligation to construct the three additional wells or to pay the stipulated penalty or damages. The obligation was a continuing one and extended to the assignees by the terms of the instrument.

The answer of Britton and Britton being a general denial, the burden was upon the appellant to prove an assignment to them of the estate created by the written contract. There was much evidence to support the position of the Brittons that they purchased of the receiver of the Capitol Oil Company, the personal property connected with the two wells, and nothing more. The testimony of the appellee Orlando H. Britton and that of Mr. Gilliland, who had been the receiver, were in substantial accord to this effect. The evidence does not include an order of the court for the sale of the lease or interest in the real estate, or show the court's approval of the sale, or any deed or writing purporting to be an assignment or transfer of a lease or any interest in land. Whether or not there were errors on the trial relating to the Brittons, there could not properly be a recovery against them because of failure to prove a valid assignment to them of the estate or interest in the land created by the contract in suit.

The judgment is affirmed so far as it relates to the appellees Britton and Britton; but as to the appellees Dailey and Eddington the judgment is reversed, with instruction to sustain the appellant's demurrers to the third, fourth, and fifth paragraphs of the answers of these appellees.