## RAMAGE v. WILSON.

[No. 5,594.   Filed March 28, 1906.]

1.   CONTRACTS.—*Leases.—Ambiguous.—Gas and Oil.*—A gas-and-
oil lease providing that the lessee "may cancel and annul this
contract or any part thereof at any time," is ambiguous, and in
construing such a lease courts will look to the nature of the
instrument and the intention of the parties.   p. 536.

2.   PLEADING. — *Answer.—Landlord and Tenant.—Leases.—Gas
and Oil.*—To a complaint for the enforcement of the provisions
of a gas-and-oil lease, an answer that defendant complied with
such lease as to the drilling of two wells; that he canceled said
contract as to the third well by releasing six and two-thirds
acres of the twenty-acre tract; that the lease provided that
lessee shall have the right to "cancel and annul its contract or
any part thereof at any time;" that it was understood by the
parties that such lease could be canceled and annulled as to
such part of the tract for each well not drilled, is bad, there
being nothing in the lease to indicate a lease of a part only of

the tract nor anything in the answer to show that the wells were put down with such end in view, or how a division could be made.   p. 536.

3.  LANDLORD AND TENANT. — *Gas-and-Oil Leases.* — *Release.* — *Parol.*—A lease granting the gas and oil under a certain tract conveys an interest in the real estate, and it can not be released by parol.   537.

4.  TRIAL. — *Leases.* — *Gas and Oil.* — *Release.* — *Evidence.* — An answer to a complaint for the enforcement of the provisions of a gas-and-oil lease, that defendant had released a portion of such tract in writing and therefore owed plaintiff nothing is not supported, where the evidence showed a release signed by some person not shown to have authority from defendant, that plaintiff refused such release and that the lease granted an interest in real estate, since the release, even if authorized, did not amount to a reconveyance.   p. 538.

From Grant Circuit Court; *H. J. Paulus,* Judge.

Action by John W. Wilson against Samuel Y. Ramage. From a judgment for plaintiff, defendant appeals.   *Affirmed.*

*Dailey, Simmons & Dailey,* for appellant.

*Wilson D. Lett, Thomas B. Dicken, Waldo E. Haisley* and *Bayless L. Guffy,* for appellee.

MYERS, J.—This is an action by appellee against appellant to recover a certain sum of money alleged to be due, by reason of appellant's failure to comply with and perform a certain stipulation in a natural gas and oil lease, which stipulation reads as follows:

"Second party also agrees to drill an additional well each and every sixty days, or pay $1 per day for each and every day's delay over that time till three wells are completed."

The complaint avers the ownership of the land in appellee, the execution by appellee of said oil-and-gas lease to Thomas McDonald, and various assignments from McDonald to appellant; the drilling of two wells on the premises; and the failure to drill a third well.   Appellant answered in five paragraphs.   A demurrer for want of facts

was sustained to the fifth. Replies were filed to the other paragraphs of answer, except the first, which was a general denial. The issues thus formed were tried by the court, resulting in a finding and judgment in favor of appellee for $307.

The only errors presented for our decision are based upon the ruling of the court in sustaining appellee's demurrer to the fifth paragraph of answer and the overruling of appellant's motion for a new trial.

In part the oil-and-gas lease, made a part of the complaint, provides that in consideration of $25 appellee granted and guaranteed unto Thomas McDonald all the oil and gas in and under a certain twenty-acre tract of land, then owned by him, together with the right to enter thereon at all times for the purpose of drilling and operating for oil and gas, and lessor was to have one-eighth part of all oil produced and saved from said premises. The lease stipulates, that in case no well is completed within fifteen months from date of lease, lessee shall thereafter pay at the rate of $1 per day for further delay, and also for the drilling of "an additional well each and every sixty days or pay $1 per day for each and every day's delay over that time till three wells are completed." "Also the right to remove all its property at any time, and to cancel and annul its contract or any part thereof at any time." The conditions between the parties extend to their heirs, executors, successors and assigns. This lease was executed July 19, 1899.

The fifth paragraph of answer, in substance, after setting out the stipulations in the lease with reference to the completion of a well within fifteen months, an additional well each sixty days, the right to the use of gas, etc., and to cancel and annul the contract or any part thereof at any time, and that the conditions of the contract shall extend to their heirs, executors, successors and assigns, alleges that two wells were drilled and completed on the real estate described in the contract within the time provided for

therein, and that such wells produced oil in paying quantities; that appellee received and accepted his portion of the oil as provided in the contract; that the two wells so drilled were located on the east thirteen and one-third acres of the twenty-acre tract described in the contract, and that no well was ever drilled on the west six and two-thirds acres thereof; that at the time of the execution of the contract it was agreed between appellee and McDonald that three wells were to be drilled on the real estate described in the contract, or if three wells were not drilled and McDonald, his heirs, executors, successors and assigns, desired to hold all of said premises, $1 per day should be paid while in default of completing wells, and it was further understood by said parties that if McDonald, his heirs, etc., desired to be relieved from the payment of said $1 per day, that six and two-thirds acres for each well not drilled should be released and canceled, and when so canceled and annulled as to six and two-thirds acres for each well not drilled, then said McDonald, his heirs, etc., should be relieved from the payment of $1 per day for a failure to drill and complete wells; that the parties to the lease construed the same to mean at all times, that the cancelation and annulment of said contract as to six and two-thirds acres of the described tract, should release McDonald, his heirs, etc., from such payment; that on February 15, 1901, there was no rental or penalty whatever due on said contract for the failure to drill a well on said real estate, and on that day the Emery Oil Company, being the owner of the lease at that time, by its agent, J. B. Hinkle, canceled and annulled the lease as to six and two-thirds acres off of the west end of the real estate covered by the lease, and at that time so informed appellee that the lease was annulled and canceled as to such portion of the real estate; that at that time the Emery Oil Company, by its agent, as aforesaid, canceled the following portion of the contract or lease, to wit:

"Second party agrees to drill an additional well each · and every sixty days, or pay $1 per day for each and every day's delay over that time till three wells are completed;"

that by reason of the facts alleged in this paragraph of answer he is relieved from the payment of the same or any portion thereof sued for in this action.

The purpose of this answer is to bring before the court what the parties intended by, and the construction by them given to, the stipulation in the lease: "And may

1. cancel and annul this contract or any part thereof at any time." This stipulation seems to be of uncertain meaning, and is certainly ambiguous. When such ambiguity arises in a contract, the courts in the construction thereof will look to the intention of the parties as evidenced from the "nature of the instrument, the conditions under which it was made, the situation of the parties, the nature of their business, the interest to be protected" (*Merica* v. *Burget* [1905], 36 Ind. App. 453), and the construction which may be developed by their acts and treatment of the contract.

There is nothing in the contract to indicate an intention to lease the land otherwise than as an entirety. The evident intention of the landowner in making the lease was

2. to have his land developed for oil and gas (*Gadbury* v. *Ohio, etc., Gas Co.* [1904], 162 Ind. 9, 62 L. R. A. 895), and to that end he stipulated for three wells, the first to be drilled within fifteen months, the other two one each sixty days thereafter, or for delay the lessee agreed to pay $1 for each day's delay. From the allegations in the answer it does not appear that the wells drilled were located with a view of the alleged construction placed upon the lease, or that there was any agreement as to the location of wells at all. It does allege that McDonald, his heirs, etc., should be released from the drilling of more than one well by canceling the contract for six and two-thirds acres for

each well not drilled. From what part of the real estate covered by the lease was each six and two-thirds acres to be taken? The answer does not tell. It does not allege that the parties ever agreed upon any division of the leased premises for such purpose, or that the cancelation of the lease on six and two-third acres off of the west end of the twenty-acre tract was ever considered by the parties as a privilege and option to the lessee whereby he might avoid liability on account of delay in drilling the third well. In our opinion the allegations of this answer are not sufficient to overcome the positive stipulation in the lease, and the real consideration therefor, to drill three wells or pay a certain stipulated sum per day for delay.

The answer is not sufficient for another reason. It counts upon a release by parol. All of the oil and gas underlying the twenty-acre tract was granted and

3. guaranteed unto Thomas McDonald, and by various assignments of the lease appellant became the owner of all rights guaranteed to the original lessee. A similar contract was held to import a sale of the gas and oil underlying the land. *Consumers Gas Trust Co.* v. *Littler* (1904), 162 Ind. 320. Gas and oil in its natural state is regarded as real estate. *Heller* v. *Dailey* (1902), 28 Ind. App. 555; *Shenk* v. *Stahl* (1905), 35 Ind. App. 493. There is no intimation from the facts pleaded in this answer that the so-called lease under which appellant is operating is insufficient to vest in him not only the right to the oil which he might mine from a particular well, but to all the oil and gas underlying the entire twenty-acre tract. He is protected in this right by a compliance with the terms and provision of the lease. *Carr* v. *Huntington Light, etc., Co.* (1904), 33 Ind. App. 1; *Heller* v. *Dailey, supra; Venture Oil Co.* v. *Fretts* (1893), 152 Pa. St. 451, 25 Atl. 732; *Heal* v. *Niagara Oil Co.* (1898), 150 Ind. 483. The answer now under consideration shows that the land, from wells sunk by appellant or his assignors, is producing

oil in paying quantities. Appellant is operating the wells under a right guaranteed to him by his lease. His right to the oil and gas having become vested, and such right being an interest in the land, and there being no question of abandonment in this case, a surrender of a part of such interest could not be by parol, but such surrender must be by an instrument in writing, duly acknowledged, and in compliance with the statute. §3335 Burns 1901, §2919 R. S. 1881; *Heller* v. *Dailey, supra.*

Appellant assigns two reason in support of his motion for a new trial: (1) The decision of the court is not sustained by sufficient evidence; (2) the decision of the court is contrary to law. Appellant's fourth paragraph of answer is substantially like his fifth paragraph, except he alleges the cancelation of a portion of the leased land by an instrument in writing, and it is this written release, introduced in evidence, which he insists precludes a recovery by appellee. The written release upon its face does not appear to be the act of the owner of the lease, but the act of an agent. It does not appear that the agent at the time of the execution of the release had any authority to execute such an instrument, and thereby bind his principal. The evidence shows that at the time of the execution of the release two wells on the east two-thirds of the twenty-acre tract were producing oil, and were being operated by the lessee. The evidence also shows that such attempted partial cancelation of the lease was not with the consent of the lessor, and that he refused to accept such release, and that the same was by such agent caused to be recorded in record No. 25, page 287, of the records of Grant county, Indiana. In view of our conclusion that the lessee at that time had a vested interest in the land' for the purposes authorized by the lease, and the lease itself being without a provision providing the manner of its termination or cancelation in whole or in part, under the authority of *Heller* v. *Dailey, supra,* such cancelation would be con-

trolled by §§3335, 3336 Burns 1901, §§2919, 2920 R. S. 1881, and §3337 Burns 1901, Acts 1883, p. 99, §1, and therefore, under the facts here appearing, such partial release would not be effective as a reconveyance of such vested interest, and consequently would not preclude a recovery by appellee.

Judgment affirmed.