### LIVELY v. ELKHORN COAL CO., Inc.
#### No. 283.

United States District Court
E. D. Kentucky, Pikeville Division.
Jan. 11, 1952.

Robert T. Winston, Jr., Norton, Va., Napier & Napier, Hazard, Ky., for plaintiff.

J. W. Howard, Prestonsburg, Ky., H. L. Moore, Whitesburg, Ky., Herman L. Taylor, Chicago, Ill., for defendant.

SWINFORD, District Judge.

This case is before the court on the motion of the defendant for a judgment notwithstanding the verdict. Fed.Rules Civ. Proc. rule 50(b), 28 U.S.C.A.

The plaintiff sued the defendant Elkhorn for damages growing out of the following facts:

Elkhorn was engaged in producing coal. Lively was an employee with the designation, Assistant Manager. Elkhorn owned certain coal lands which it desired to develop. Lively entered into an arrangement with Elkhorn whereby he was to go upon the leasehold, remove the overburden, strip mine the coal, build necessary roads, approaches and bins, and deliver the coal to Elkhorn at its tipple, bins or ramps at a certain sum per ton. It was understood that all expense of roads, stripping and other work incidental to such operation was to be borne by Lively and the coal was not to be accepted unless it was of merchantable quality.

There was no written contract or memorandum of the agreement.

Lively took his machinery upon the property and began his prospecting in the fall of 1946. He began loading and delivering coal in small quantities and as he said in a "spotty" fashion in the winter or spring of 1947. He began loading coal in large quantities and "in earnest" in June of 1947. The enterprise was very successful and Lively employed other contractors to strip mine the coal. This operation continued until January 24, 1950. One of the contracting companies which Lively had employed was a firm by the name of Blair and Oldham. It is disclosed by the record that Lively delivered between 110,000 and 115,000 tons of coal and that Blair and

1016

Oldham had produced for him an additional 60,000 tons. A stock pile of about 2,000 tons had accummulated without being loaded, which was a circumstance leading up to the incident of January 24, 1950. On that date Lively entered into a written contract with Blair and Oldham whereby they were to produce all of the coal on the lands in question and were to give him the sum of fifteen (15) cents per ton. Prior to this contract Lively was receiving fifty-two (52) cents per ton. Lively contends that he was forced to make this contract by Elkhorn because it had repudiated its contract with him and was giving Blair and Oldham the exclusive right to produce and deliver the coal.

Lively filed this action claiming $25,000 loss of profit in coal remaining in place which he could have produced and the further sum of $19,000 for money which he expended in building and maintaining roads and bins for his use in producing and delivering the coal and of which he only got the partial benefit.

The case was tried by a jury which returned a verdict for the plaintiff in the sum of $15,000. It has been several months since the case was tried. Many pages of briefs have been filed. The court has reviewed the record, read and re-read the depositions, briefs and exhibits and has listened to recordings of parts of the evidence at the trial and had parts of the proceedings at the trial transcribed.

I must conclude that the defendant's motion should be sustained and a judgment entered for the defendant.

The contract on which the action was brought should have been in writing. The Kentucky statute of frauds, Section 371.010 (6) (7), KRS, provides as follows:

"No action shall be brought to charge any person: "(6) Upon any contract for the sale of real estate, or any lease thereof for longer than one year; or "(7) Upon any agreement that is not to be performed within one year from the making thereof; unless the promise, contract, agreement, representation, assurance or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent. The consideration need not be expressed in the writing, but it may be proved when necessary or disproved by parol or other evidence."

The contract was clearly a lease of coal lands and was not to be performed within a year. The Kentucky courts have expressly passed upon an almost identical question in the case of Beckett-Iseman Oil Co. v. Backer, 165 Ky. 818, 178 S.W. 1084. In that case the court said: "It is well settled that oil and gas are minerals, and are a part of the realty, and a lease giving to the lessee the right to explore certain lands and remove therefrom the oil and gas is a contract for the transfer and sale of an interest in lands, and is required to be in writing. Thornton on the Law Relating to Oil and Gas, § 291; 20 Cyc. 215; Williamson et al. v. Jones, 39 W.Va. 231, 19 S.E. 436, 25 L.R.A. 222; Wilson v. Youst, 43 W.Va. 826, 28 S.E. 781, 39 L.R.A. 292; Riddle v. Brown, 20 Ala. 412, 56 Am.Dec. 202; Lear v. Chouteau, 23 Ill. 39; Huff v. McCauley, 53 Pa. 206, 91 Am. Dec. 203; Entwhistle v. Henke, 211 Ill. 273, 71 N.E. 990, 103 Am.St.Rep. 196; Ramage v. Wilson, 37 Ind.App. 532, 77 N.E. 368; Henry v. Colby, 3 Brewst.[Pa.] 171, cited in 10 Ann.Cas. 100."

To sustain the plaintiff's position in the case at bar it would be necessary to ignore this Kentucky case, which I cannot find has ever been reversed or modified. It seems to me conclusive of the issue. Lively, like the Beckett-Iseman Oil Company, was prospecting for minerals. If he found coal of merchantable quality he was to produce it. If he could not produce merchantable coal he was to stand the loss of whatever money he had expended in the enterprise.

Neither was it a contract for services which were to be performed within a year. The plaintiff contends that it could have been performed within a year and is therefore without the statute. It is true the rule of law provides if a contract could be performed within a year even though it was not so performed it is not subject to the statute of frauds. This rule, however, is subject to the exception that where it is obvious from all surrounding facts

and circumstances that it was not within the contemplation of the parties or within reason that it would be performed within a year the statute applies. As is disclosed by the record, the circumstances in the instant case clearly disclose that it was impossible from all practical purposes to perform this contract within a year. The plaintiff worked on the development for over three years and it was not concluded then. Our Kentucky courts have frequently had the matter before them. The rule is stated in the following quotation from Williamson v. Stafford, 301 Ky. 59, 190 S.W.2d 859, 860: "But there is a well-recognized exception to the rule above re-cited, and that is that when it was contemplated by the parties that the contract would not, and could not, be performed within the year, even though it was possible of performance within that time, it comes within the inhibition of the Statute. Cumberland & Manchester R. Co. v. Posey, supra [196 Ky. 379, 244 S.W. 770]; East Tennessee Tel. Co. v. Paris Electric Co., 156 Ky. 762, 162 S.W. 530, Ann.Cas. 1915C, 543; Kentucky Utilities Co. v. Hurst, 207 Ky. 448, 269 S.W. 525; King v. McMillan, 293 Ky. 399, 169 S.W.2d 10."

█ The plaintiff insists that even though the statute of frauds applies to this case that there is sufficient memoranda of the transaction to meet the test of a written contract. I cannot agree. I have searched diligently among the exhibits. Most of the correspondence set forth with the deposition of Mr. Putnam is inter-office correspondence of the defendant. I can find nothing in it which identifies the terms of the oral agreement sufficiently to meet the test in this state. The question was before the court in Beckett-Iseman Oil Co. v. Backer, supra [165 Ky. 818, 178 S.W.2d 1085]. The court said: "It is the rule in this state that the subject-matter of a contract must be contained in the contract, and the writing or memorandum relied on must afford the means of identification. Unless it does, the contract is within the statute of frauds. Price v. Hays, 144 Ky. 535, 139 S.W. 810; Bates, et al. v. Harris, et al., 144 Ky. 399, 138 S.W. 276, 36 L.R.A., N.S., 154. Passing other objections to the sufficiency of the writings, it is plain that they do not sufficiently identify the subject-matter of the contract. Nowhere is the lease, which it was proposed to sell, described, nor is there any description of the lands covered by the lease, by which they could be identified with reasonable certainty."

█ The statute of frauds justifies its soundness in this very case. The idea is that in dealing with contracts pertaining to real property and to contracts that will continue for more than a year there should be no mistake about their terms. The terms should not be subject to determination by memory of individuals. They should be in writing and so explicit that litigation will not arise. This is a rule of property and should be literally applied unless exception is justified by explicit memoranda clearly setting forth the terms of the agreement and signed by the party to be charged. McKnight v. Broadway Investment Company, 147 Ky. 535, 145 S.W. 377, 16 A.L.R.2d 624.

The plaintiff relies strongly on the case of Ross v. Columbus Mining Company, 204 Ky. 474, 264 S.W. 1071. The principal question decided in that case was that under the proof there presented the contract was one which might have been performed within a year. It does not seem to me that the case is precedent for the case at bar at all. None of the defenses before the court in this case were considered in the Columbus Mining Company case. Counsel in brief says "it is significant, however, that in this case such a contract was not held to be a sale of realty." I can not find where the question was raised or discussed. The whole case turned upon the factual proposition of whether the contract involved should be construed under the proof to be for more than a year. The big question was a reconciliation of certain dates appearing in the proof of the contract. The court held that the contract was to be performed within a year and the statute did not apply.

The plaintiff advances the further claim that even though the contract could not be enforced that the judgment should stand on the proof that the plaintiff had expended for road building and repair of roads and

on building and repairing bins several thousand dollars more than the amount of the verdict.

The action was primarily on the contract and for loss of profits. The case was practiced throughout on this theory. The proof as to expenditures by the plaintiff was in support of his claim that there was a contract. The Kentucky Court of Appeals expressly holds that contracts such as the one in issue are not for personal services, but for a definite undertaking. Ross v. Columbus Mining Company, supra.

 Certainly the plaintiff could not recover on both the contract and for expenditures made in furtherance of the contract. He acknowledges the fact that these costs were to be his and no part was to be paid by the defendant. He seeks to bring himself within the rule that where one party had executed his part of the contract which is repudiated by the other party he who has so performed may recover his expenditures even though the contract is held to be invalid because not in writing. The plaintiff's contract was to produce the coal. It was not executed by mere building of roads and bins. It remained executory until the coal was fully produced. In Terry v. Terry, 264 Ky. 625, 95 S.W.2d 282, 284, the court said: "Though a different rule prevails in some jurisdictions, the rule in this state is that, with the exception of contracts not to be performed in a year part performance will not take the case out of the statute, though a party may have equitable rights which he may enforce. Beckett-Iseman Oil Co. v. Backer, 165 Ky. 818, 178 S.W. 1084; Dant v. Head, 90 Ky. 255, 13 S.W. 1073, 12 Ky. Law Rep. 153, 29 Am.St.Rep. 369; Boone v. Coe, supra [153 Ky. 233, 154 S.W. 900, 51 L.R.A., N.S., 907]; Maloney v. Maloney, 258 Ky. 567, 80 S.W.2d 611."

See, also, Head v. Schwartz' Ex'r, 304 Ky. 798, 202 S.W.2d 623.

The verdict of the jury could not possibly be construed to be a refund for such expenditures, as the case was submitted on the question of whether or not there was a contract. While it is true the question of such expenditures was referred to in the instructions it was only in connection with the proof on the establishment of a contract. Had the question been presented to the jury in the proper way the instruction would have had to require them to elect which claim they were allowing, whether on the contract or on quantum meruit.

██ The plaintiff is not entitled to recover any more on quantum meruit than on the contract. He built and maintained the improvements for his own use in producing approximately 170,000 tons of coal, from June 1947 to January 1950. His sub-contractor, Blair and Oldham, who are paying him fifteen (15) cents per ton for coal they are producing are still using some of the improvements. It would be impossible for the court to determine or for a jury to find just what portion of the roads and improvements he used in carrying out of the contract and what was done by him for which he got nor can get benefit. Such damages would be so highly speculative that a proper instruction could not be given to a jury and a jury could find no basis for a verdict.

On the whole case I must conclude that the defendant's motion at the conclusion of the plaintiff's evidence and at the conclusion of all the evidence should have been sustained. The "Motion For Judgment Notwithstanding Verdict" will be sustained and an Order to that effect and judgment for the defendant is this day entered.