Foran, J.
Francis X. Byerley died testate November 9, 1911, leaving three sons and five daughters living. In his last will and testament, after making certain dispositions of his property among *323 his eight children, he disposed of certain claims for profits and damages on account of the infringement of a patent that had been issued to him in his lifetime. Five-eighths of these claims were, by the terms of the will, bequeathed absolutely to the defendant, Francis A. Byerley, a son of the testator, the other three-eighths being equally divided between the remaining children. Shortly after the death of Francis X. Byerley all the children or legatees under the will met at the house of the plaintiff, when the validity of the will was discussed, some of the heirs claiming that the will did not represent the wishes or the intention of their father and was unfair particularly to the daughters of the testator, and plaintiff claims that the defendant was then and there informed that unless he divided among the five daughters oné-eighth of the proceeds of the infringement claims, in addition to the amount bequeathed to them in the will, they would bring proceedings to contest the will; and that thereupon the defendant, who was made executor and trustee under the will, agreed with the plaintiff and the other heirs that if they would agree not to contest the validity of the will, he would distribute equally among the five daughters one-eighth of the proceeds of the infringement claims as collected, in addition to the share bequeathed to them by the will of their father. And the plaintiff says that, in consideration of this agreement, the defendant agreed to so distribute to these five daughters one-eighth of the infringement claims of damages in addition to that left them by the terms of the will. Plaintiff further claims that she and the other heirs who were parties to this agreement have fully performed all the conditions thereof, and that defendant has failed and refused to perform and carry out the terms and conditions of the contract upon his part, and that there is therefore due her a certain sum of money under the terms of this agreement or contract.
The defendant admits that there was a meeting of all the heirs at the plaintiff’s house on or about the 17th day of February, 1911, and that the will of their father was then and there discussed; but he claims that the agreement was that if the other heirs, brought no proceedings of any hind to cause him trouble or to hamper or impede him in the administration of the estate, he would pay one-eighth of the proceeds of the infringement claims *324 to the five daughters, in addition to the sum left them by the terms of the will.
It is agreed by the parties that during the year 1911 a large sum of money, perhaps thirty or forty thousand dollars, was collected on account of these infringement claims and distributed among the five daughters, each receiving an amount equal to one-eighth of the claims so collected, according to the terms of the contract.
It is also admitted that after the expiration of two years from February 17, 1911, a further sum of $141,000 was collected on account of these claims, which sum the defendant refuses to distribute according to the terms of the contract as claimed by the plaintiff, or according to the terms of the contract or agreement as claimed by the defendant; and for the reason, as defendant claims, that the plaintiff and the other heirs did institute proceedings in't.he probate court of such a nature as to impede and hamper him in the administration of the estate and to cause him trouble in such administration.
The proceedings in -the probate court were objections filed to the partial reports of the executor and trustee. The contention of the defendant is that the action for the infringement claims or damages was brought in the name of Francis X. Byerley in his lifetime, and that, as a matter of fact, Francis A. Byerley, the defendant, owned and had an interest in the patent issued to Francis X. Byerley; and that the reason he made the agreement as he claims it was made was that it was dangerous to the collection of these claims to have it become known that Francis X. Byerley was not the real party in interest; and for that reason the defendant did not desire any litigation which would call in question the title to this patent.
After a jury had been impanelled and sworn, the defendant interposed an objection to the introduction of-any evidence, for the reason that the agreement or contract declared upon by the plaintiff, and as appeared from the opening statement of plaintiff’s counsel, was within the statute of frauds, and that it could not be performed within one year, for the reason that on February 17th the period of time during which a will contest could be instituted was two years from the date of probate. It was admitted that the will was probated on the 15th day of February, *325 1911. The objection being in effect a demurrer to the evidence and petition, it must be assumed the contract was as claimed by the plaintiff and it will be so treated.
The precise question presented by the motion or demurrer of the defendant has never been decided in this state, nor has any other precedent or authority been cited outside of the state that is squarely in point.
Counsel for the defendant, who is always engenuous, candid, honest and fair in his statements to court and jury, frankly admitted in his statement to the jury that if an action had been brought to contest the validity of the testator’s will, the defendant was liable to lose a large sum of money, perhaps five-eighths of over $200,000, as practically that amount had been collected from various concerns who had infringed upon the patent of the testator.
As has been already said, this condition grew largely out of the fact that the infringement suits had been brought in the name of the testator, and if the fact was disclosed that the patent was owned by the testator and the defendant, or the partnership which had existed between the testator and the defendant, the right of recovery would be seriously jeopardized, that is, if it was made to appear that the defendant, as he claims, had an interest in this patent, recovery would be extremely doubtful. This being so candidly .and frankly admitted, it will be seen the defendant had a large pecuniary interest in preventing any litigation that would endanger the successful prosecution of these suits. If, therefore, the contention or the allegation of the plaintiff’s petition that the agreement was as is therein set forth, it will be readily seen that the agreement or contract, if one was made as the plaintiff claims, was very beneficial to the defendant. Courts have always held that the enforcement of good faith in matters of bargain and contract, next to the enforcement of laws for keeping the peace and securing property against invasion, violence and fraud, is the most important function of legal justice. Indeed it is known to all members of the legal profession that less than one hundred years ago an attempt was made, with considerable success, to extend the range of enforceable contracts without regard to what the principles of law would bear, in order to satisfy a sense of natural justice. As a general rule, in *326 matters of contract tbe ascertained will of the parties should prevail; but there are limits to the force of this general rule fixed by statute, which is of course above individual will or private interests ; and this grows out of the need of securing good faith and justice to parties against fraud and misadventure; but the scope of these statutes ought not to be extended to defeat the very purpose for which they were intended or designed. The object of the statute of frauds, now invoked, was or is not to declare a promise .or an agreement void, but to require ¡a certain kind of proof essential to its enforcement. Because it was thought oral proof was prolific of fraud and perjury, it was deemed necessary to require written evidence of the making of certain kinds of contracts. It must be admitted that human memory is fallible; and oral .agreements, so far as their precise terms are concerned, are difficult of establishment or enforcement after a lapse of one or more years after the date or time such agreements are said to have been made. It is quite evident, however, that these statutes in very many cases have been the means of perpetrating more frauds and injustice than they have prevented. Hence when their enforcement would necessarily result in the infliction of injustice, courts are inclined to construe them strictly, and to insist that fhe facts, in every case in which they are invoked, shall fall squarely within the spirit .as well as the letter of the statute.
It is tacitly conceded, if not admitted, that during the period in which the plaintiff could have contested the testator’s will, the defendant performed under the alleged .agreement either as claimed by the plaintiff or as claimed by him. If he performed under the agreement .as claimed by the plaintiff before the time elapsed in which she could bring such a contest of the will, she was, by such performance of the defendant, lulled into inaction. Now, when the plaintiff can not bring such an action, the statute is invoked. No contest was brought either within the two years in which it might have been instituted or at any time. The defendant received the benefit of the good faith of the plaintiff and the other parties to the agreement in refraining to contest the testator’s will, and now -when that right is irretrievably lost to her and the other heirs, the statute is invoked. Surely the statute ought not to act as a shield to a man who. breaks ,a prom *327 iso and thus enable him to retain, by reason of the statute, the benefits he admits he derived from the parol agreement. Good faith, at least, on his part, required that he should have taken advantage of the statute before the period of time in which the contest could be instituted had elapsed, so. that the other parties might avail themselves of their right to bring such proceedings if they deemed it .advisable to do so. The defendant having failed to invoke the statute during the time within which the contest could be brought, should he be permitted to invoke it now?
The authorities with respect to oral agreements not to be ¡performed within one year are in conflict, the doctrine in Ohio being in many respects materially different from the doctrine in other states. The general rule laid down by Smith in his work on frauds, Section 347, is that:
“If it appears from the contract itself that it was not to be performed within one year, or w.as not intended to be performed within one year, the statute applies; but if it was a contract which might have been performed within one year, and which the plaintiff, at his option, might‘have required the defendant to perform within a year, it is not within the statute. ’ ’
This is practically the doctrine in Ohio. The Ohio rule is, in effect, that an oral agreement which by its terms is not to be performed within one year from the time it was made will not be enforced, unless the agreement or some memorandum or note thereof is in writing and signed by the party to be charged or by some person authorized by him to sign it.
In Westropp v. Westropp, 13 O. C. C., 244, where the authorities in this and other states are reviewed, it is substantially held that to bring a case within the statute, it must have been expressly stipulated by the parties, or appear to have been clearly understood by them upon a reasonable construction of the contract, that the contract was -not to be performed within a year, as where time is fixed in terms.
In that case this court was one of counsel, and it was there held that—
“Where a son placed in the hands of his mother $500, with the agreement with her that she should use it if needed during her life, the amount unexpended at her death to be paid back to him, such contract is not within the statute of frauds as not to *328 be performed within one year, although the mother lived eleven years afterwards.”
And it was further held that the fact that at the death of the mother her administrator by law would have eighteen months in which to repay the money will not place it within the statute of frauds.
An examination of the authorities seems to ■ show that there is a distinction where the contract is for a given period of time, more than a year, and its ending within that time depends upon the happening of some contingent event, and a contract or agreement where no time is fixed for the contract to run, unless it may end with the happening of some uncertain event which may happen within a year. This is substantially the language of the opinion in the case just cited.
A great many of these oral contracts which .are- inhibited by Section 8621, General Code, which have been passed upon by the courts are what might be termed service contracts or agreements. McPherson v. Cox, 96 U. S., 404, relates to a contract to pay an attorney for services, in suits concerning land, if the lands were recovered.' No time w.as fixed within which the services were to be performed, and it was held that the agreement was not void because not in writing as it might be performed within a year.
It is admitted in the case now before the court that all the claims for infringement damages, suits for which were then pending in the federal courts of several jurisdictions, might be collected within .a year from the date of the alleged agreement; and that, so far as the defendant was concerned, even if the agreement was as claimed by the plaintiff, it could have been performed within a year.
In many jurisdictions it is held that if, by the terms of the agreement or a reasonable construction thereof, the contract can be fully performed within a year, although it can only be done by the occurrence of some contingency by no means likely to happen, such as the death of some party or person referred to in the contract, the statute has no application.
This is not the doctrine in 'Ohio. It was held in Witter v. Gottschalk, 5 O. D. (Reprint), 77, that a verbal contract by the terms of which one man agreed not to carry on a certain busi *329 ness in a certain neighborhood for five years, that the agreement was within the statute of frauds and could not be enforced, and that the possibility of the death of one of the parties would not take it out of the statute. This ease was affirmed in Gottschalk v. Witter, 25 O. S., 76, where it was held in the first part of the syllabus that—
“An agreement by the lessor to let the lessee have the good will of a business, and that the lessor will abstain from carrying on a like business in the same locality for a period of five years, is within the statute of frauds, and voidable if not in writing.”
A great many very respectable authorities, from Supreme Courts whose decisions are generally quoted with approval, do not agree with this doctrine. However this may be, the doctrine of the 25 O. S., just cited, will not be extended beyond the facts passed upon in that case. As a general proposition, the courts will adhere to ,and follow former decisions where the same points come again ih litigation (Price v. Toledo [4 C.O.(N.S.), 57], 15 O. C. D., 617); or in other words, the broad principle lying at the base of the doctrine of stare decisis is embraced in the maxim res judicata, that is, that the matter has been decided; and it will be admitted that the doctrine of res judicata binds parties and privies, and that the doctrine of stare decisis governs the decisions of the same question in the same way in other actions between strangers to the record.
Admitting the soundness of the doctrine of 25 O. S. (i. e., Gottschalk v. Witter), we think it will be found that the facts decided in that case, or that the doctrine therein laid down, does not apply to the case now before the court.
In Plimpton v. Curtiss, 15 Wend., 336, it was held in the syllabus that—
“An agreement to save the statute of frauds need not be in writing, although by the terms of it the party may at his election perform the agreement after the year; it is only when it appears by the whole tenor of the agreement that it is to be performed after the year that a note in writing is necessary.”
It will be noticed here that the court distinctly holds that— “It is only when it appears by the whole tenor of the agreement that it is to be performed after the year that a note in writing is necessary.”
*330 In this ease the plaintiff: declared on a contract made the first day of October, 1828, to do certain work before the close of the year 1829. The statute under consideration was practically the same as the Ohio statute. The defendant was to find timber for the frame of a house and to build the house for the plaintiff; and the court said, on page 337:
‘ ‘ There is nothing in the agreement prohibiting the defendant from completing the contract within six months or a shorter period. Suppose he had done so, and sued the plaintiff for compensation for his labor and the materials found, would it have been permitted to the plaintiff to have said that the contract was not to be performed within a year, and therefore it was not obligatory upon him ? Most clearly not. And if obligatory upon one party, it is equally so on the other. The defendant might have performed the contract within a year, and therefore it is not within the statute.”
Of course it will be said, admitting this to be true, still the plaintiff in this case could not perform the contract or the agreement as claimed by her within a year. But we want to bear in mind the language of the court, that “If the contract was obligatory upon one party, it is equally so on the other.” If the defendant in this ease could have performed the contract within a year, and that is admitted, then it was obligatory upon his part to so perform it; and if the plaintiff accepted the benefits of the contract so performed, it is indeed difficult to understand how she could maintain an action thereafter to contest the validity of her father’s will, as such acceptance made it obligatory on her.
The question still remains, however, that the plaintiff could not perform the contract within a year.
In Kurz v. Guarantee Company, 7 Ohio Nisi Prius, 118, it is held that—
“An oral contract which may be and actually is performed by one party within one year from the date of the making thereof, but is not to be performed by the other party thereto until after one year from the date of said contract, does not fall within the provision of the statute of frauds.”
It is admitted now that the defendant could have performed the whole contract within a year so far as he was concerned; and *331 if all the damages for infringement claims had been collected, he would undoubtedly have so performed, as he actually did distribute about $40,000 according to the terms of the agreement as claimed by the plaintiff. The fact that the plaintiff and none of the other heirs ever brought any proceedings to contest the validity of the will of the testator, is conclusive evidence of their good faith to carry out the terms of the contract. They, in fact, fully .performed.
The ease of Blanding v. Sargent, 33 N. H., 239, is a case directly in point. It is here held in the syllabus that:
“If by its terms, or by a reasonable construction, a contract not in writing can be fully performed within a year, although it can be done only by the occurrence of some improbable event, as the death of a person referred to, is not within the statute of frauds. If an .agreement not in writing can be performed on one side within a year, though it can not be on the other, it is not within the statute.”
This is a, contract somewhat similar to that declared upon in Gottschalk v. Witter, 25 O. S., supra; and the statute of frauds of New Hampshire is practically the same as that of Ohio. The court, page 246, said:
“Though either of the parties may have it in his power to put an end to a contract within a year, yet if, independent of the exercise of such power, the agreement can not be performed within a year, it must be in writing. If the .agreement can be fully performed by either of the parties within the year, and it is so performed, -the agreement of the other party is not within the statute, though it may be impossible to perform it within a year.”
It will be noticed here that the language of the court differs somewhat from the language of the syllabus, or the doctrine laid down in the syllabus, because in the syllabus the words “and it is so performed” are omitted. We believe that the doctrine in New Hampshire, as in Ohio, is that the syllabus expresses the doctrine or law of the case.
We are aware that the doctrine of part performance does not pertain in Ohio, except cases in equity; but the doctrine of Ohio is that a party who refuses to go on with the contract after having received the benefit of a part performance must pay for what he has received. This will be admitted.
*332 If the agreement was as the plaintiff contends, that no proceedings should be instituted to contest the validity of the will, and the defendant agreed, in consideration of this promise, to make the payments claimed by the agreement, then he did derive a benefit by the failure to institute such proceedings; and we are inclined to think that he should not avail himself, under all the circumstances, of the doctrine of part performance as defined in Ohio, even if that part performance was upon his part only.
It is admitted that the damages growing out of the infringement suits might have been collected within a year from the time the alleged agreement was made; and if these damages had been so collected, 'it must also be admitted that the plaintiff could have required the defendant to perform, under the agreement, if it was as she claimed; and it will not avail to say that, notwithstanding the plaintiff required the defendant to perform in such event, she still had a right .to institute contest proceedings, for the reason that she would be estopped from; bringing such proceedings by the performance of the defendant and her acceptance of the benefits accruing to her from such performance, and because her right to bring such contest lapsed and was extinguished by such acceptance. If the plaintiff brought an action to contest the will two years after the date of probate, she would be unable to maintain the action, because of the statute of limitations; but she could, for all that, have brought the action. We think it idle to say that because the plaintiff could have instituted contest proceedings within two years, even though she had received her full share of all the infringement damages, as provided in the alleged contract, therefore the contract falls within the statute of frauds. If her right to bring this action lapsed or was extinguished by the performance of the defendant and her acceptance of the benefits thereof, it is difficult to understand how her mere right to do a vain, idle and nugatory thing could render this alleged agreement inimical to the statute of frauds.
Although the defendant distributed over $30,000 of the infringement claims received during 1911, he subsequently, when the time'had elapsed in which contest proceedings could be instituted, deducted or withheld the amount so distributed in making further distributions of other funds of the estate aside *333 from the infringement assets. He elected to treat the contract as valid when it was beneficial to him to do so, and now seeks to treat it as invalid .after having availed himself of the benefits acquired by the contract.
Counsel for defendant insists that the doctrine of Gottschalk v. Witter, 25 O. S., 76, is decisive and conclusive of the issues in the ease before us.
Before this case can be taken as a controlling precedent it may be well to again define a binding precedent.
As we understand it, .a judicial decision can only serve or operate as a precedent for future determinations in similar or analogous cases; that is, the facts in the case in which the precedent is invoked as a governing or controlling rule, though differing in some degree, must be closely alike or similar to the facts in the case in which the judicial decision was rendered.
It therefore becomes necessary to examine the facts and issues in the ease relied upon.
There were really two cases between the parties, the first, Witter v. Gottschalk, found in the 5 O. D., 77, from which it appears that Witter and Gottschalk entered into a verbal contract in 1871, in the city of Cincinnati, by the terms of whichGottschalk sold to Witter certain personal property and the good will of a business he was then carrying on, and agreed not to carry on the same or a similar business in any part of the city of Cincinnati for five years. The consideration paid by Witter was $300 cash for the personal property, and $1,000 in three promissory notes of $333 each for the good will. These facts were found by the jury in the second case, or the case of Gottschalk v. Witter, 25 O. S., 76. In violation of the agreement, Gottschalk, shortly after it had been made and entered into, opened a store and began to carry on the same or a similar business within the area prescribed by the agreement. Witter thereupon commenced an action in the Superior Court of Cincinnati, special term, to enjoin Gottschalk from so doing. Goitschalk in his answer denied in the first defense the contract as claimed by Witter, and in the second defense invoked the statute of frauds. Witter demurred to this second defense. The demurrer was overruled, which action of the court rendered a traverse of the first defense unnecessary. Judgment was therefore *334 rendered for the defendant, and error prosecuted to the court in general term. It was there held that the contract was within the statute of frauds, and, not being in writing, could not be enforced; and that the contingency or a possibility of Gottschalk ’s death within one year did not take it out of the statute, “such possibility not making it less a contract not to be performed in a year.”
The court bases its decision upon the proposition that the contract, by its very terms, was not to be performed within a year. There being a stipulated time (five years), performance could not depend upon the happening of a contingency such as the death of Gottschalk. The court in its opinion approves the doctrine or the language in Brown on Statute of Frauds, Section 273, that—
‘ ‘ The result of tho decisions seems to be that the statute does not mean to include an agreement which is simply not likely to be performed, nor one which is simply not expected to be performed, but that it means to include any agreement which, fairly and reasonably interpreted, does not admit of a valid execution within the space of a year from the making. ’ ’
This is the doctrine applied in Westropp v. Westropp, supra.
The court frankly admits that the authorities are not uniform, but relies upon Dobson v. Collis, 1 H. & N., 81; Packett Co. v. Sickles, 5 Wall., 580. In the latter case the time fixed was during the continuance of a certain patent; and as this patent had twelve years to run after making the agreement, it was held that by its very terms the contract could not be performed within a year, as the time was in no sense indefinite, but actually fixed by the terms of the verbal contract.
In the second phase of the Gottschalk-Witter litigation, which is the phase or case passed upon in the 25 O. S., 76, Gottschalk brought suit on one of the three promissory notes given him by Witter for the good will of the business. When this case was tried in the court below the jury found, in answer to ques-, tions propounded by the trial court, that the contract was as Witter claimed, that the notes were given for the sale of the good will only, and that Witter had fully paid for all he received aside from the good will.
It will be here noticed that when Gottschalk invoked the statute of frauds in the case before the Superior Court of Cin *335 cinnati, 5 O. D., 77 {supra), he did not return the $300 received for the personal property, or offer to- restore Witter to the position in which he was before the agreement was made. He elected to treat the contract as a nullity and retain what he had received by its terms. Not only that, but he sought to collect the notes given for the good will which, by his own conduct, he had rendered absolutely valueless. Being defeated in his action on the note and the notes being ordered canceled, he prosecuted error to the Supreme Court. Here the doctrine of Witter v. Gottschalk, 5 O. D., 77, was affirmed, though the court in the opinion gave no reason for the doctrine, and it may be fairly said the question was not really before the court. The court, however, in the opinion says, page 80 :
“The principal ground of error relied upon is, that the claim set up in the cross-petition (by Witter) was barred by the former action. It is claimed to be a bar for two reasons: 1. Because the plaintiff (Witter), by prosecuting the former action, elected to affirm the contract, which he now seeks to rescind; and 2. Because the matters set up in the cross-petition were adjudicated in that case.
“Neither of these propositions, in our judgment, is maintainable. The former action can not operate to affirm the contract, because the plaintiff, by pleading the statute, has elected to avoid it. He has by this plea reduced the contract to a nullity, and there is, therefore, nothing left to be affirmed. The plaintiff can not at the same time avoid the contract and insist that the parties have elected to fulfill it. The former action was merely an election to affirm the contract, provided the plaintiff did not choose to avoid it by pleading the statute of frauds. The plaintiff had his election, whether to avoid the contract, as he has done in both actions, by his plea of the statute, or to treat it, as the defendant, by his former 'action offered to treat it, as valid and binding. Having chosen to avoid it, nothing remains but to restore the parties to their former situation. Neither party can avoid the contract and hold on to what he has acquired under it.”
This language is significant. The defendant in the case at bar, during 1911, when over $30,000 of the infringement claims were collected or received by him as executor, had his election to avoid the contract or treat it as valid. He elected to treat the contract as valid by distributing to the plaintiff and the other four sisters one-eighth of this sum in addition to that al *336 lowed them under the will. If he at this time elected to avoid the contract, or so elected any time within two years after probate of the will, the plaintiff would be at liberty to institute proceedings to contest the will; but the defendant elected to treat the contract as valid, and proceeded to perform in accordance with its terms until the two years in which contest proceedings could be brought had elapsed, and then, when such proceedings could not be instituted, he elected to treat the contract hs void. At the time this contract was made negotiations were pending for the settlement of the infringement suits, and all testimony has been taken in these suits. The $141,000 which defendant refuses to distribute according to the terms of the contract were collected and came into the hands of defendant long after proceedings -to contest the will could be brought. The plaintiff and the other heirs, parties to the contract, had fully performed the contract on their part in refraining to bring contest proceedings ; and when their right to do so was lost the defendant seeks to rescind or avoid the contract. Surely the language just quoted is obviously apjDlicable: “Neither party can avoid the contract and hold on to what he has acquired under it.” If contest proceedings had been instituted and the question of the title to the patents was raised, as it surely would be in such proceedings, five-eighths of nearly $200,000 might have been and probably would have been lost to the defendant. Besides, as the defendant was by the terms of the mil given practically one-half of the testator’s entire estate, and there being eight heirs, a contest proceeding might involve questions which the defendant might find it embarrassing to meet, as he was in close touch with his father in business for many years and the father was 84 years of age when the will was made. It is therefore evident that all the money received from infringement claims, of which five-eighths went to the defendant, was acquired by him by reason of the good faith of the plaintiff in electing to treat the contract as valid, and this he seeks to retain and hold on to and avoid the contract at the same time. This would be manifestly unjust and inequitable — a monstrous contention supported by no authority presented to the court. Both parties elected to treat this contract as valid and began performance thereunder; and we think, whether it was technically fully performed with *337 in two years from the date of the making thereof or fully performed thereafter by the plaintiff and the other heirs, it falls squarely within the doctrine of the 33 N. II. and the 7 N. P., siopra, and that the defendant should not now be permitted to avail himself of the statute. It is quite evident the defendant paid or distributed about $30,000 of the infringement claims solely under the contract and with reference to itv and the plaintiff received her share of these claims solely with reference to the contract; and as she and the other heirs in good faith refrained from instituting proceedings to contest the will, we are clearly of the opinion that, both parties having elected to treat the contract as valid, neither should now be permitted to invoke the statute of frauds.
It is uniformly held that while the doctrine of part performance is a doctrine of equity, and does not prevail in law, yet when a man pleads the statute of frauds to avoid a verbal promise, he must return what he has received under the agreement, as where a man sells land on a verbal contract and receives a part of the purchase money, he can not avoid the contract and retain the money .actually received. If he chooses to avoid the contract, “nothing remains but to restore the parties to their former situation. Neither party can avoid the contract and hold on to what he acquired under it.” 25 O. S., 80, supra.
The defendant has acquired very substantial value under the contract which he seeks to retain to the great injury of the plaintiff. It is impossible for him to now restore the parties to the former situation, as the time in which a contest of the will could be instituted has elapsed, and such contest can not now be maintained. The parties can not at this time be placed in statu, quo, nor can the status quo be restored; hence the defendant must be required to p.ay the plaintiff her proportion of what he acquired in money from the infringement claims under the contract. The plaintiff has no remedy as to anything she may have lost otherwise by not bringing proceedings to contest the will. The contract was fully performed by the plaintiff and the other heirs, and the defendant has reaped the benefit of this performance on their part, and the defendant, having elected to treat the contract as valid while the danger of contest proceedings impended and existed, he will not now be heard to say *338 the contract is invalid when this danger no longer impends or exists, and at the same time “hold on to what he acquired under it.”
The motion or demurrer will be denied and overruled.